**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Fifth Floor
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for 461 Myrtle Avenue Funding LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ARMSTEAD RISK MANAGEMENT, INC., | Case No. 19-41489 (ESS) |
| *Debtors*. | |

## 461 MYRTLE AVENUE FUNDING LLC'S DISCLOSURE STATEMENT

461 Myrtle Avenue Funding LLC ("Myrtle Funding" or the "Plan Proponent"), a secured creditor of Armstead Risk Management, Inc., the debtor and debtor-in-possession in this Chapter 11 Case (the "Debtor"), hereby proposes and files this Disclosure Statement (the "Disclosure Statement") with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), in connection with Myrtle Funding's proposed Plan of Liquidation (as it may be amended, altered, modified or supplemented as described herein, the "Plan"). A copy of the Plan and exhibits thereto is annexed to this Disclosure Statement as **Exhibit A**. The principal asset of the Debtor is the adjoining multifamily, mixed use real properties located at 459-461 Myrtle Avenue, Brooklyn, NY 11205 [Block 1889, Lots 89 and 90] (*collectively*, the "Property"). All capitalized terms used in this Disclosure Statement have the meanings ascribed to such terms in the Plan, except as otherwise indicated, and in the Auction Sale Procedures.

**THIS DISCLOSURE HAS NOT YET BEEN APPROVED BY THE COURT AND IS NOT BEING OFFERED FOR SOLICITATION OF VOTES UNLESS AND UNTIL IT IS APPROVED BY THE COURT.**

**THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RESULT FOR ALL HOLDERS OF CLAIMS AND INTERESTS AND THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S CREDITORS AND INTEREST HOLDERS.    THE PLAN PROPONENT**

**STRONGLY URGES ALL HOLDERS OF CLAIMS IN IMPAIRED CLASSES RECEIVING BALLOTS THAT ARE ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT IT ONCE THE DISCLOSURE STATEMENT HAS BEEN APPROVED AND THE PLAN SENT OUT FOR REVIEW AND VOTING.**

**ONCE APPROVED BY THE COURT, THIS DISCLOSURE STATEMENT WILL BE DESIGNED TO SOLICIT YOUR ACCEPTANCE OF THE ATTACHED PLAN AND WILL CONTAIN INFORMATION RELEVANT TO YOUR DECISION.  PLEASE READ THIS DISCLOSURE STATEMENT, THE PLAN AND THE OTHER MATERIALS COMPLETELY AND CAREFULLY.  THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE BANKRUPTCY COURT BEFORE OR CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT AND THE PLAN.**

**NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS WITH RESPECT TO THE PLAN OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT.  NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, THE LIQUIDATING ESTATE OR THE VALUE OF THE DEBTOR'S PROPERTY HAVE BEEN AUTHORIZED OTHER THAN AS SET FORTH HEREIN.**

**EACH CREDITOR AND INTEREST HOLDER OF THE DEBTOR SHOULD CONSULT WITH THEIR LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

## I.    INTRODUCTION

This Disclosure Statement is being furnished by the Plan Proponent pursuant to section 1125 of the Bankruptcy Code, in connection with the solicitation of Ballots to accept or reject the Plan from Holders of Claims in Classes 1, 2, 3, 4 and Interests in Class 5.

Pursuant to Section 1121(b) of the Bankruptcy Code, for the first 120 days of a bankruptcy case the Debtor and the Debtor alone has the exclusive right to file a plan of reorganization or liquidation and solicit acceptances thereto.  The 120th day after the Filing Date was July 12, 2019 and by that date the Debtor did not file a plan or extend its time to do so.  The 'exclusive period' having terminated, on August 5, 2019, the Plan Proponent filed an Plan of Liquidation with the Bankruptcy Court.  Contemporaneously herewith, the Plan Proponent filed this Disclosure Statement with the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and in connection with the solicitation of Ballots to accept or reject the Plan (the "Solicitation").

On [              ] 2019, the Bankruptcy Court determined that this Disclosure Statement, along with any changes requested by the Court which are included herein, contains "adequate information" in accordance with section 1125 of the Bankruptcy Code.  Pursuant to section 1125(a)(1) of the Bankruptcy

Code, "adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1).

**The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan for [_____], 2019 (prevailing Eastern Time), before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800. The hearing may be adjourned from time to time without further notice other than by announcement in the Bankruptcy Court on the scheduled date of such hearing or any adjourned hearings thereof. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for the Plan Proponent listed below so as to be received by [      ] 2019 (prevailing Eastern Time). Counsel on whom objections must be served are:**

Ravert PLLC
116 West 23 Street, Suite 500
New York, New York 10011
Attn.: Gary O. Ravert, Esq.
*Attorneys for 461 Myrtle Avenue Funding LLC*

Courtney Davy, Esq.
305 Broadway, Suite 1400
New York, NY 10007
*Attorneys for Armstead Risk Management, Inc.*

United States Trustee
Office of the United States Trustee for the Eastern District of New York
201 Varick Street, Room 1006
New York, New York 10014
Attn: Rachel Wolf, Esq.

Attached hereto as Exhibits are copies of the following documents:

> **Exhibit A:** The Plan and Exhibits thereto;

> **Exhibit B:** The Debtor's chapter 11 petition and associated documents, the 1007 Affidavit, and the Schedules.

> **Exhibit C:** Reserved for the Debtor's monthly operating reports since the Filing Date (none filed as of the date hereof).

> **Exhibit D:** Proposed order of the Bankruptcy Court, dated [      ] 2019 (the "Solicitation Procedures Order"), among other things, approving this Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan; and

**Exhibit E:** Liquidation Analysis.

## II    SUMMARY OF CLASSIFICATION AND
## TREATMENT OF CLAIMS AND INTERESTS IN THE PLAN

The estimated aggregate amount of claims in each class, and the estimated amount and nature of consideration to be distributed to each class, is summarized in the table below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims of the Office of the United States Trustee, Administrative Expense Claims and Priority Tax Claims have not been classified. The Plan Proponent's estimate for recoveries by Holders of Allowed Claims is subject to the results of (i) the Auction (as described further below) and (ii) available Cash as of the Distribution Date, if any, and is further based on, among other things, the Plan Proponent's current view of the likely amount of Allowed Claims, including Allowed Administrative Expense Claims incurred by the Debtor through confirmation of the Plan and the costs of administering and winding down the Debtor's Estate. There can be no guaranty that the Plan Proponent's estimates will prove to be accurate.

The estimated amount of Claims shown in the table below are based upon the Plan Proponent's review of the Debtor's Schedules, review of publicly available records including the record of open real estate taxes and water and sewer charges, and the proofs of claim filed in the Debtor's case as of the date hereof. The amount designated in the table below as "Estimated Range of Recovery" for each Class is the percentage based on the estimated Cash available to be distributed to Holders of Allowed Claims in each Class, divided by the estimated aggregate amount of Allowed Claims in each Class. For a discussion of the various factors that could materially affect the amount of Cash to be distributed under the Plan, *see* Section V herein. For purposes of computations of Claim amounts, unclassified claims such as United States Trustee Claims, Priority Tax Claims, and Administrative Expense Claims and other expenses, the Effective Date is assumed to occur in or about June of 2019.

## III.    SUMMARY OF CLASSIFICATION AND TREATMENT UNDER THE PLAN

| CLASS | TREATMENT | ESTIMATED AGGREGATE AMOUNT OF ALLOWED CLAIMS OR INTERESTS | ESTIMATED RANGE OF RECOVERY (Low-High) |
|---|---|---|---|
| Unclassified<br><br>(U.S. Trustee Claims, Administrative Claims, Priority Tax Claims) | **Non-voting/ unclassified:** The claims in this category are unclassified and do not vote on the Plan. These claims consist of U.S. Trustee fees, administrative expenses of the estate including legal fees of retained professionals and priority tax claims. The Plan Proponent estimates that the Claims in this category will total in the aggregate approximately $65,000 or $70,000 as of the Effective Date, which figure includes U.S. Trustee fees of approximately $20,000 to $25,000, $14,000 in IRS claims, approximately $20,000 in municipal tax claims, $10,000 in professional fees *but does not include* Plan Proponent's legal fees and expenses addressed as part of the treatment of Class 2 (which itself includes a substantial contribution claim), the Allowed Myrtle Funding Secured | $65,000 - $70,000 | 100% |

| | | | |
|---|---|---|---|
| | Claim. All of these claims will be paid in full by Myrtle Funding, from available Cash and from Causes of Action, if any, if Myrtle Funding if it is the Successful Bidder at the Auction. They will be paid from the Sales Proceeds if a Cash bidder prevails at the Auction. The Plan Proponent is not aware of any Causes of Action to be pursued. | | |
| **Class 1**<br><br>(Priority Claims) | **Impaired, Voting:** There were no other non-tax Priority Claims scheduled by the Debtor in the Schedules and none have been filed as of the date hereof. To the extent such Claims exist and become Allowed Claims, they shall be paid Pro Rata up to in full from the Sales Proceeds, available Cash, and from Causes of Action, if any, or, if Myrtle Funding is the Successful Bidder at the Auction, from Myrtle Funding up to the $25,000 Creditor Fund to be established by Myrtle Funding, plus available Cash, plus recoveries from Causes of Action. The Plan Proponent does not believe there are any Priority Claims. The Plan Proponent is not aware of any Causes of Action. | $0 | 100%<br><br>The Plan Proponent is not aware of any non-tax Priority Claims. It expects that if any Priority Claim is asserted (subject to applicable objection rights) it would be paid 100%. |
| **Class 2**<br><br>(Myrtle Funding Secured Claim) | **Impaired, Voting:** Myrtle Funding will be the stalking horse bidder in connection with the auction of the Property and the auction is the principle source of funding for the Plan. If Myrtle Funding is the Successful Bidder, the Property will be transferred to Myrtle Funding in full satisfaction of its Claim free and clear of all liens, claims and encumbrances pursuant to section 1123(a)(5)(d) of the Bankruptcy Code. If Myrtle Funding is the winning bidder on its Credit Bid, it will (i) pay all unclassified Claims in full on the Distribution Date including Administrative Claims (without waiving its right to object to any such claims) and (ii) will fund the Creditor Fund with $25,000 plus available Cash for payment, along with Avoidance Action proceeds, if any, for payment of Class 1 first and then, Classes 3 and 4 Pro Rata within each Class. If Myrtle Funding is outbid by a Cash bidder, the unclassified Claims and the Class 1, 2, 3 and 4 Claims will be paid from the Sales Proceeds, plus available Cash, and Causes of Action if any. If the Sales Proceeds are insufficient to pay the priority and secured claims of Classes 1 and 3 in full after payment of Class 2, then Myrtle Funding will fund the Creditor Fund with $5,000 plus available Cash, which will be used to pay Class 1 up to in full and Classes 3 and 4 Claims Pro Rata.<br><br>In the event that there is no timely objection to Myrtle Funding's Claim, and if a Cash bidder is the Successful Bidder at the auction, then Myrtle Funding shall be paid at the Closing the prepetition amount of $3,795,916.27 plus any amounts allowed pursuant to section 506(b) of the Bankruptcy Code plus any amounts allowed pursuant to a properly filed substantial contribution motion, for a full estimated payout in Cash of approximately $3,986,156.57 as of August 31, 2019 and depending upon the final amount of its Allowed Claim. To the | $3,986,156.57 credit bid based on a claim as of August 31, 2019 of $3,986,156.57, which includes as of such date $3,795,916.27 as of the Filing Date, plus post-petition interest of approximately $160,000 , plus advances, plus postpetition legal fees in the amount of approximately $30,000, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code and/or a properly filed substantial contribution motion, for a total estimated prepetition claim of approximately $3,986,156.57 as | Up to 100%<br><br>The Debtor estimated that the value of the Property is $5.5 million. The Plan Proponent believes the value is less, possibly as low as $4.5 million. If either of these values or more are achieved, all Claims would be expected to be paid in full with a return to Class 5. The Plan Proponent has no information as to the fair market value that could be achieved at an auction and relies on the auction process to establish the Property's true value. |

| | | | |
|---|---|---|---|
| | extent any portion of Myrtle Funding's Claim is not allowed, Myrtle Funding will make up that portion of its credit bid with a cash bid. | of August 31, 2019. To the extent any portion of Myrtle Funding's Claim is not allowed, Myrtle Funding will make up that portion of its credit bid with a cash bid. | |
| **Class 3** (Claim of Receiver) | **Impaired, Voting:**  Class 3 consists of the Allowed Claim of the state court receiver, Gregory LaSpina, Esq. (the "Receiver"), whose claim is approximately $50,000 secured by the proceeds of the Property. In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, then there will be no cash Sales Proceeds above the Allowed Myrtle Funding Secured Claim thereby rendering the Receiver Claim unsecured (to the extent there is no available Cash).  In that event, the Allowed Class 3 Claim of the Receiver will be paid pari passu and Pro Rata, after Class 1 Claims, if any, are paid in full, along with holders of Class 4 Claims, up to in full, from the Creditor Fund of $25,000 to be funded by Myrtle Funding plus available Cash along with Avoidance Action proceeds, if any.  Any shortfall in payment of the Receiver Claim shall be paid directly by Myrtle Funding in accordance with the Receiver's state law rights. In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds plus available Cash, after payment in full, on the Distribution Date, of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim, plus post-petition amounts due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code, plus the full amount set forth in the Myrtle Funding Substantial Contribution Claim, then to the extent the Receiver Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and available Cash.  If there are insufficient Sales Proceeds plus Cash to pay the Receiver Allowed Secured Claim in full, then, Myrtle Funding shall fund the Creditor Fund in in the amount of $5,000, plus available Cash for distributions to unsecured creditors in Class 1 up to in full and then to Classes 3 and 4 on a Pro Rata basis.  To the extent there is a shortfall in payment of the Receiver Claim, Myrtle Funding shall pay the balance in accordance with the Receiver's state law rights.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5.  The holder of the Receiver Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata Distribution from any Causes of Action up to payment in full. | $50,000.00 | 1%-100% The Debtor estimated that the value of the Property is $5.5 million.  The Plan Proponent believes the value is less, possibly as low as $4.5 million.  If either of these values or more are achieved, all Claims would be expected to be paid in full with a return to Class 5 equity interests.  The Plan Proponent has no information as to the fair market value that could be achieved at an auction and relies on the auction process to establish the Property's true value. |

| Class 4 (General Unsecured Claims) | **Impaired, Voting:** Class 4 consists of all Allowed General Unsecured Claims. The Debtor did not schedule any unsecured claims. As of the date hereof, only one unsecured proof of claim was filed, that of Con Edison in the amount of $828.05.<br><br>If Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, then Myrtle Funding shall fund the Creditor Fund in the amount of $25,000 plus available Cash which will be used to pay Class 1 Claims, if any, up to in full and then Pro Rata to holders of Allowed Class 3 and Class 4 Claims.<br><br>In the event that the Successful Bidder is a Cash bidder, then on the Distribution Date from the Sales Proceeds plus available Cash, after payment in full of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim, plus post-petition amounts due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code, plus the full amount set forth in the Myrtle Funding Substantial Contribution Claim, then to the extent the Receiver Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds plus available Cash. If there are insufficient Cash Sales Proceeds to pay the Receiver Allowed Secured Claim in full, then, Myrtle Funding shall fund the Creditor Fund in in the amount of $5,000, plus available Cash for Distributions to Allowed Class 1 Claims, if any, up to in full and then to Allowed Claims in Classes 3 and 4 Pro Rata. The Plan Proponent is not aware of any Causes of Action. To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of Classes 1, 3, 4, and 5, all of which Claims, as set forth herein, shall be entitled to a Pro Rata Distribution from any Causes of Action up to payment in full. | $828.05 | 1% - 100%<br><br>The Debtor estimated that the value of the Property is $5.5 million. The Plan Proponent believes the value is less, possibly as low as $4.5 million. If either of these values or more are achieved, all Claims would be expected to be paid in full with a return to Class 5. The Plan Proponent has no information as to the fair market value that could be achieved at an auction and relies on the auction process to establish the Property's true value. |
| Class 5 (Interests) | **Impaired, Voting:** Class 5 consists of Allowed Interests in the equity of the Debtor. In the event Myrtle Funding is the Successful Bidder and there are no Sales Proceeds for Distribution, then Myrtle Funding shall fund the Creditor Fund in the amount of $25,000, plus available Cash for Pro Rata Distributions within each Class to Classes 1 first up to in full, and then Pro Rata to Allowed Claims in Classes 3 and 4 up to in full. Class 5 Interests shall only receive a Distribution if Classes 1 – 4 are paid in full, subject to the terms hereof. Class 5 Interests shall receive excess Sales Proceeds, plus available Cash, plus recoveries of Causes of Action, after payment in full of all unclassified Claims set forth in Article II and III, and Classes 1, 2, 3, and 4 Claims are paid in full with interest at the Federal Judgment Rate, which is approximately 2.5%<br><br>If the Successful Bidder is a Cash bidder, then on the Distribution Date from the Sales Proceeds plus available Cash, after payment in full of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim, plus post-petition amounts due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code, plus the full amount set forth in the Myrtle Funding | n/a | 0%-100%<br><br>Based on known Claims, no recovery for Class 5 is likely unless the sale price for the Property is at least $4,150,000. |

| | Substantial Contribution Claim, then to the extent the Receiver Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim. If there are insufficient Sales Proceeds and available Cash to pay the Receiver Allowed Secured Claim in full, then, Myrtle Funding shall fund the Creditor Fund in in the amount of $5,000, plus available Cash for Distributions to the Allowed Claims in Classes 1 first up to in full, and then Classes 3 and 4 in accordance herewith. The Plan Proponent is not aware of any Causes of Action. To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4 and 5. The holder of any Claims in Classes 1, 3, and 4, the extent they are Allowed Claims, shall be entitled to a Pro Rata Distribution in accordance herewith from any Causes of Action up to payment in full with interest and then to Class 5. | | |

As described more fully below and in the Liquidation Analysis annexed hereto at **Exhibit E**, the actual value of the Property is not known at this time but will be determined at the Auction. Plan Proponent believes the value of the Property should be at least $3,986,156.57, which is the amount of Myrtle Funding's asserted Claim as of August 31, 2019 and which is the basis of the amount of Myrtle Funding's Credit Bid, which shall constitute the Opening Bid at the auction. To the extent that any portion of Myrtle Funding's claim is disallowed, Myrtle Funding shall make up in cash that disallowed portion of its Opening Credit Bid. The Plan proposes to let the market establish the actual value of the Property through the marketing and Auction sale. As set forth in the Liquidation Analysis, the Plan Proponent believes that recoveries for creditors under this Plan would exceed the Distributions, if any, in a conversion and liquidation under Chapter 7 or a dismissal of this Case.

## IV. VOTING AND CONFIRMATION OF PLAN

### A. Acceptance of Plan

As a condition to confirmation, section 1129(a) of the Bankruptcy Code requires that: (a) each impaired class of claims or interests votes to accept the plan; and (b) the plan meets the other requirements of section 1129(a). Classes that are unimpaired are deemed to have accepted a plan and, therefore, are not entitled to vote and classes that do not receive or retain any property under a plan are deemed to have rejected a plan and are likewise not entitled to vote. Neither of those scenarios apply to this Plan. Accordingly, acceptances of the Plan are being solicited all parties who hold Claims in each Impaired Classes. An Impaired Class of Claims will be deemed to have accepted the Plan if Holders of at least two- thirds in dollar amount and more than one-half in number of Claims in such Class that cast timely ballots vote to accept the Plan.

Holders of Claims or Interests who do not timely vote on the Plan are not counted for purposes of determining acceptance or rejection of the Plan by any Impaired Class of Claims or Interests.

### B. Voting Procedures and Requirements

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms of a plan of liquidation or reorganization, and who receive Distributions under

such plan, are entitled to vote to accept or reject the plan. Generally, a class is "impaired" under a chapter 11 plan unless such plan leaves unaltered the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest. Classes of claims and interests that are not impaired are not entitled to vote on the plan and are conclusively presumed to have accepted the plan.

As set forth in the above chart, Holders of Claims in Classes 1, 2, 3, 4 and 5 are impaired and entitled to vote on the Plan. If any such Class votes to reject the Plan, (a) Plan Proponent will seek to satisfy the requirements for Confirmation of the Plan under the cramdown provisions of section 1129(b) of the Bankruptcy Code and, if required, may amend the proposed Plan to conform to the standards of such section, or (b) the Plan may be modified or withdrawn in its entirety.

Please carefully follow all of the instructions contained on the Ballot or Ballots provided to you with this Disclosure Statement if you are entitled to vote on the Plan. All Ballots must be completed and returned in accordance with the instructions provided.

To be counted, your Ballot or Ballots must be received by the Voting Deadline of [        ], 2019 at 5:00 p.m. (prevailing Eastern Time) by Plan Proponent's counsel, Ravert PLLC, Attn; Gary O. Ravert, Esq., having its address at Ravert PLLC, 116 West 23 Street, Suite 500, New York, NY 10011, Attn: Gary O. Ravert, Esq.,. It is of the utmost importance that you vote promptly to accept or reject the Plan.

If you are entitled to vote and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please call Plan Proponent's counsel, Ravert PLLC, Attn; Gary O. Ravert, Esq., at (646) 961-4770 or email him at gravert@ravertpllc.com.

Votes cannot be transmitted orally, by facsimile, or by email. Accordingly, you are urged to return your signed and completed Ballot, by hand delivery, overnight service or regular U.S. mail, promptly, so that it is received by the Plan Proponent's counsel on or before the Voting Deadline. Unless a ballot is properly submitted and timely received for a Claim, such Claim will not be included for the numerosity or claim amount requirements under section 1126(c) of the Bankruptcy Code.

C.    Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after proper notice to parties in interest, to hold a hearing on whether a plan proponent has fulfilled the confirmation requirements of section 1129 of the Bankruptcy Code. The Confirmation Hearing with respect to the Plan has been scheduled for [        ], 2019 at 10:00 a.m. (Eastern time) before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge of the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to confirmation must be made in writing and must specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the Claim or Interest held by the objecting party. Any such objections must be filed and served upon the persons designated in the notice of the Confirmation Hearing and in the manner and by the deadline described therein.

At confirmation, Plan Proponent intends to seek entry of a Confirmation Order that confirms the Plan, approves the Auction Sale Procedures and authorizes, without further order of the Court, the auction, sale, and

the transfer of the Property to the Successful Bidder or Back-up Bidder from a public auction, in either case free and clear of all liens, claims and encumbrances and with all of the protections of Section 1146 of the Bankruptcy Code concerning transfer taxes. Except to the extent that the Holder of a particular Claim or Interest has agreed to a different treatment of its Claim, the Plan provides: (a) that U.S. Trustee Claims, Allowed Administrative Expense Claims and Allowed Priority Tax Claims will be paid in full in Cash from the proceeds of the sale of the Property or, if Myrtle Funding is the successful bidder based on a credit bid and therefore there are no surplus proceeds, available Cash or recoveries from Causes of Action, then by Myrtle Funding, and (b) all other Claims will be paid as set forth in the Plan from available Cash, the Sales Proceeds, the Creditor Fund, and/or Causes of Action.

If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired by the Plan has accepted the Plan, determined without including any acceptance of the Plan by any "insider."

All U.S. Trustee Fees payable under section 1930 of Title 28, together with any interest thereon pursuant to 31 U.S.C. 3717, as determined by the Bankruptcy Court at the Confirmation Hearing either have been paid or the Plan provides for the payment of all such fees on the Effective Date from any Sales Proceeds, available Cash, or Causes of Action or, if Myrtle Funding is the successful bidder based on a credit bid and therefore there are no Sales Proceeds, available Cash or Causes of Action, to pay such Claims, then directly by Myrtle Funding. The Plan further provides for the payment of all U.S. Trustee Fees accruing from and after the Effective Date.

The Debtor did not schedule and is not believed to have any Retiree Benefits (as defined in section 1114 of the Bankruptcy Code).

The Plan Proponent believes that the Plan otherwise satisfies, to the extent applicable, all of the statutory requirements of Chapter 11 of the Bankruptcy Code. Certain of these requirements are discussed in more detail below.

D.      Confirmation Requirements

1.      Feasibility

In connection with confirmation of the Plan, section 1129(a)(11) requires that the Bankruptcy Court find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This is the so-called "feasibility" test. Here, the Plan contemplates an orderly liquidation of the Debtor's assets and distribution of all of the proceeds thereof to Creditors holding Allowed Claims pursuant to the Auction and provisions of the Plan. Accordingly, confirmation of the Plan will not be followed by a liquidation or further reorganization. Plan Proponent, therefore, believes that the Plan complies with the standard of section 1129(a)(11) of the Bankruptcy Code.

2.      "Best Interests"; Liquidation Analysis

In order to confirm the Plan, the Bankruptcy Court also must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not accept the Plan as required under the Bankruptcy Code, the "best interests" test requires that the Bankruptcy Court find that it provides to each member of such Impaired

Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the Distribution that each such member would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of Claims or Interests would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the aggregate dollar amount that would be available if the Chapter 11 Case was converted to a Chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a Chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of the Debtor would consist of the net proceeds received from the disposition by a Chapter 7 trustee (as opposed to a disposition under this Plan) of the Debtor's Property and other assets plus any cash or recovery from Causes of Action held by the Debtor.

The Liquidation Value available to Holders of Claims or Interests that are not Secured Claims would be reduced by, among other things: (a) the Claims of Secured Creditors to the extent of the value of their collateral and the likelihood such secured Claims would increase dramatically in amount while a chapter 7 trustee prepared for liquidation of the Property; (b) the costs, fees, commissions, and expenses of Chapter 7 liquidation, as well as other administrative expenses of the Debtor's Chapter 7 Case; (c) unpaid Administrative Expense Claims of the Chapter 11 Case; and (d) Priority Claims and Priority Tax Claims, which would likely increase in amount with the passage of time, (d) a likely lesser value received for the Property as a result of the taint of a Chapter 7 liquidation rather than through an orderly sale in Chapter 11, and most importantly (e) the lack of a dedicated Creditor Fund to ensure a minimum recovery to creditors if there are insufficient Sales Proceeds, available Cash or Causes of Action to pay Claims. The Debtor's costs of liquidation in Chapter 7 Case would include the statutory commissions or compensation of the trustee, as well as legal fees of a trustee's counsel to familiarize herself with the Case, and those of other professionals retained by such trustee, asset disposition expenses, applicable Taxes, litigation costs, Claims arising from the prolonged administration of the Debtor during the pendency of the Chapter 7 Case and all unpaid Administrative Claims incurred by the Debtor during the Chapter 11 Case that are allowed in the Chapter 7 Case.

The information contained in **Exhibit E** hereto provides a summary of the Liquidation Value of the Debtor's interests in property, assuming a Chapter 7 liquidation in which the trustee appointed by the Bankruptcy Court would liquidate the Debtor's properties and interests. In summary Plan Proponent believes that Chapter 7 liquidation would result in diminution in the value to be realized by Holders of Allowed Claims, as compared to the proposed Distributions under the Plan as a result of the additional layer of administrative costs attendant with appointment of a Chapter 7 Trustee and professionals therefor. The Plan Proponent believes that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a Chapter 7 liquidation of the Debtor.

3.  Cramdown

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan if all other requirements under section 1129(a) of the Bankruptcy Code are satisfied, and if, with respect to each Impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to such Class. Confirmation under section 1129(b) of the Bankruptcy Code requires that at least one Impaired Class of Claims accepts the Plan, excluding any acceptance of the Plan by an "insider" (as that term is defined in section 101 of the Bankruptcy Code). The Plan Proponent intends to seek confirmation of the

Plan notwithstanding the non-acceptance of one or more Impaired Classes.

    E.   Alternatives to Confirmation and Consummation of the Plan

      If the Plan is not confirmed, the Debtor's Chapter 11 Case would most likely be (i) converted to a liquidating case under a Chapter 7 trustee's supervision or (ii) dismissed. If the Case is dismissed, Myrtle Funding would immediately proceed with the state court foreclosure process. The Plan Proponent does not believe that any value of the Property above Myrtle Funding's Claim would remain for more than a few months after which there would be no equity above Myrtle Funding's claim. Once that happens, there would be no possible avenue for recovery for other creditors of this Debtor. The Plan Proponent believes that under either alternative, conversion to chapter 7 or dismissal, Distributions to unsecured creditors, if any, would necessarily be reduced or eliminated from those realized under the Plan.

      Under the Plan, all Allowed Administrative Expense Claims and Allowed Priority Claims are guaranteed to be paid in full from the sales proceeds, available Cash, recoveries on Avoidance Actions or recoveries on Causes of Action or in the event the Debtor's Estate is administratively insolvent then from Myrtle Funding. These recoveries are assured under the Plan, even if the value of the Property is less than the amount of the Allowed Myrtle Funding Secured Claim and, in that case, Myrtle Funding funds the Creditor Fund.

      Further, if the value of the Property exceeds the amount of the Allowed Myrtle Funding Secured Claim, then the excess will flow to creditors without diminishment due to foreclosure expenses or Chapter 7 expenses, including trustee's statutory commissions and professional and legal fees.

      Consequently, Plan Proponent believes that the Plan will provide a much greater ultimate return to Holders of Allowed Claims than would a Chapter 7 liquidation of the Debtor or a dismissal.

## V.  **BACKGROUND**

      On or about the Filing Date, the Debtor filed with the Bankruptcy Court under penalty of perjury a pro se chapter 11 petition seeking bankruptcy protection (the "Petition"). The Petition was accompanied by a sworn list of creditors, which list included only Myrtle Funding, the Receiver, and Velocity Commercial Capital, the original plaintiff in the state court foreclosure matter. Over a period of months after the Filing Date, the Debtor filed some but not all required documents with the Bankruptcy Court setting forth background information about the Debtor. A copy of such filings are attached hereto as and made part of **Exhibit B**. The Debtor is an active New York corporation with its principal place of business at 459 Myrtle Avenue, Brooklyn, NY 11205 and a mailing address of 2 Hassake Road, Old Greenwich, CT 06870. The Debtor is a single asset real estate company that owns two contiguous, mixed use, residential and commercial buildings located at 459-461 Myrtle Avenue, Brooklyn, NY 11205 [Block 1889, Lots 89 and 90] (defined above as the Property). The Debtor owns all of the right, title and interest in and to the Property subject to valid liens against the Property. Myrtle Funding holds a note, recorded first mortgage, assignment of leases and rents, and personal guaranty of the Debtor's principal and the recorded first mortgage is a first priority lien on the Properties. The Debtor scheduled the collective value of the Property at $5,600,000. The Property is occupied, in whole or in part, with residential tenants, a commercial tenant which is a business operated by the Debtor's principal, and there is a commercial antenna lease believed to be with T-

Mobile and/or Omnipoint. The auction of the Property contemplated herein is as-is, where-is, and subject to all valid tenancies.

The recorded mortgage held by 461 Myrtle Avenue Funding LLC (defined herein as Myrtle Funding), remains outstanding, is in default since October 1, 2016, and is subject to state court foreclosure proceedings were commenced in New York State Court for Kings County under Index No. 510329/2017 (the "Foreclosure Action"), which Action is stayed by the chapter 11 case. While in default, interest accrues on the unpaid principal balance of $2,714,640.58 at the rate of 12.5 % per annum or approximately $942/day, or more than $28,000 per month, plus allowed legal fees and expenses. As of the date hereof, during the pendency of this case, more than $160,000 in interest has accrued. Pursuant to section 506(b) of the Bankruptcy Code, there shall be allowed postpetition interest and legal fees, to the extent allowed in the underlying documents, on oversecured claims like the claim asserted by Myrtle Funding. Myrtle Funding intends to assert its rights under section 506(b) of the Bankruptcy Code. In the state court Foreclosure Action, Myrtle Funding moved for the appointment of a receiver of rents and Gregory LaSpina, Esq. was appointed receiver (the "Receiver"). The Receiver commenced a number of state court proceedings to enforce his rights as receiver. As a result of the many state court legal proceedings, the Receiver asserts a claim in this case, secured by the rents and Property, in the amount of approximately $50,000. After the appointment of the Receiver and following certain landlord tenant rulings obtained by the Receiver, the Debtor commenced this Bankruptcy Case to stay further state court proceedings. It is the Plan Proponent's belief that the Property is fully or nearly fully occupied including the commercial units, which are occupied by a business run by the Debtor's principal Malik Armstead.

On March 14, 2019 (the "Filing Date") the Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor has continued in its business as a debtor in possession pursuant to 11 U.S. C. §§ 1107 and 1108. Since the Filing Date, the Property has been occupied and the Plan Proponent believes productive and generates monthly revenue in unknown amounts and expenses of unknown amounts because none of the required monthly operating reports have been filed. To the best of the Plan Proponent's knowledge, the Debtor is a holding company with no other business operations and no employees.

As of the Filing Date, Myrtle Funding asserted a fully secured claim in the amount of $3,795,916.27 based on a defaulted note and first mortgage lien. As a fully secured claim and pursuant to the underlying note and mortgage, Myrtle Funding asserts that, pursuant to Section 506(b) of the Bankruptcy Code, Myrtle Funding's Claim continues to accrue interest, legal fees and expenses. As of August 31, 2019, Myrtle Funding estimates that approximately $160,000 in interest and plus legal fees and costs estimated through confirmation to be approximately $30,000 became due and owing (subject the proper filing of a substantial contribution motion pursuant to section 503(b) of the Bankruptcy Code on notice to case parties, and subject to allowance by the Bankruptcy Court). Thus, Myrtle Funding asserts a Claim in the amount of approximately $3,986,916.27. Myrtle Funding has agreed to bid such amount as an opening bid in the auction of the Property. To the extent any portion of this opening bid amount is disallowed, Myrtle Funding will make up that disallowed portion in cash as part of its opening bid at an auction, if any.

## VI. **THE CHAPTER 11 CASE**

Since the Filing Date, the Debtor has continued to operate as debtor-in-possession subject to the supervision of the Bankruptcy Court. An immediate effect of the commencement of the Chapter 11 Case was the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoined

the commencement or continuation of all collection efforts by creditors, the enforcement of liens against the Debtor and any litigation against the Debtor. This injunction remains in effect, unless modified or vacated by order of the Bankruptcy Court, until the Plan is confirmed and the Conditions to the Effective Date are satisfied.

A.    Significant Chapter 11 Events

1.    Schedules and Statements of Financial Affairs. Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 require a debtor to prepare and file schedules and statements of financial affairs in connection with the commencement of a Chapter 11 Case. On the Filing Date, the Debtor filed its voluntary chapter 11 petition and a creditor list listing just three creditors including Myrtle Funding, the Receiver and the original plaintiff in the Foreclosure Action. On March 28, 2019, Mr. Davy filed an appearance as bankruptcy counsel for the Debtor. The Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs are due within 15 days of the Filing Date, or in this case they were due by March 29, 2019, unless such date was extended by the Court. No request for an extension was ever made. Between May 4th and May 13th, 2019 well more than a month late, the Debtor filed partial Schedules, which are attached hereto as and made part of **Exhibit B**. On May 23, 2019, Mr. Davy filed his application to be retained as Debtor's counsel. Between May 31st and June 24th 2019, the Debtor filed additional disclosures, Schedules and the Statement of Financial Affairs, all of which are made part of **Exhibit B** in the order and manner in which they were filed. On June 24, 2019, the Debtor filed a motion to establish a claim bar date to which Myrtle Funding filed a limited objection based on the unnecessarily long period of time proposed to be given to the governmental entities to file a claim in this case. At a status conference on July 23, 2019, the Debtor and the Court agreed that September 26, 2019 would be the bar date for all claimholders including governmental units. On July 23rd and July 24th Mr. Davy filed supplemental affidavits in support of his retention. As of the date hereof, no order authorizing his retention and no order setting a bar date has been entered. A copy of the chapter 11 petition and associated documents, the 1007 Affidavit and the Debtor's Schedules are attached hereto as **Exhibit B**. [Docket Nos. 1, 15, 16, 17, 18, 19, 20, 21, 24, 26, 27, 28]. Since the Filing Date, the Debtor has not filed any operating reports, which are required by, among other things, Rule 2015 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2015-1 At the July status conference, the Court directed the Debtor to come current with missing operating reports by July 30, 2019. As of that date, and as of the date hereof, no operating reports have been filed. Accordingly, as of the date hereof, little to nothing is known about the income and expenses of the Debtor since the Filing Date. The Schedules however reflect that the Debtor collects more than $11,000 per month in rents and that figure does not include any rent from the business run at the Property by the Debtor's principal. This Disclosure Statement will likely be amended to include the operating reports once they are filed and **Exhibit C** hereto is reserved for those reports once filed. Given the lack of operating reports, most of the financial and claims-related information contained in this Disclosure Statement is derived from statements under oath by the Debtor's principal in the Schedules and at the initial creditor meeting conducted by the Office of the United States Trustee. All parties are encouraged to review all of the attachments to this Disclosure Statement as part of their evaluation of the Plan.

2.    Bar Date. As of the August 5, 2019, the Debtor had not obtained an order establishing a final date for creditors to file proofs of claim in the Debtor's case. This is typically filed by debtor within the first few months of a chapter 11 case. In this case, the motion for same has been filed but no order has been entered. It is expected that September 26, 2019 will be the bar date for all parties in this case.

3.     Retention of Professionals. The Law Firm of Courtney Davy, Esq. has appeared on behalf of the Debtor.  On May 23, 2019, Mr. Davy filed his initial application for his retention as counsel to the Debtor.  He filed supplements to such retention application on June 24, 2019, July 23, 2019 and on July 24, 2019.  As of August 5, 2019, no order has been entered retaining such law firm.

4.     Other Motions.  As of the date hereof, the Debtor has not filed any other motions or applications in the Bankruptcy Case.  The Debtor has not filed a plan or disclosure statement, has not commenced making adequate protection payments to Myrtle Funding as its senior secured creditor, has not retained an accountant, has not filed a sale motion or a motion to obtain financing to address the debt to Myrtle Funding the accrual of interest, and has not obtained consent or authority to use rents, which are Myrtle Funding's cash collateral.  Section 363 of the Bankruptcy Code prohibits the use of cash collateral, i.e., the rents from the Property, without the consent of the secured party, Myrtle Funding.  Myrtle Funding has not consented to the Debtor's use of its cash collateral and no order has been entered authorizing the Debtor to use such cash collateral.  Accordingly, as of August 5, 2019, the Debtor is in violation of section 363 of the Bankruptcy Code.

## VII. SUMMARY OF THE PLAN

The following is an overview of certain material provisions of the Plan.  The following summaries of the material provisions of the Plan do not purport to be complete and are qualified in their entirety by reference to all the provisions of the Plan, all exhibits, all documents described therein, and the definitions therein of certain terms used below.  Terms used herein but not defined herein shall have the meaning ascribed to them in the Plan.

A.     The Effective Date of the Plan is the date that is fifteen (15) days after the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day; provided, however, that if all Conditions Precedent to the Effective Date have not been satisfied or waived, if subject to waiver, on or prior to such date, then the Effective Date shall be the following date on which all such Conditions Precedent to the Effective Date have been satisfied or waived, if subject to waiver.

B.     General Information Concerning Treatment of Claims and Interests

1.     United States Trustee Claims, Administrative Expense Claims and Priority Tax Claims

Pursuant to the Plan, Holders of Claims of the Office of the United States Trustee, Allowed Administrative Expense Claims and Allowed Priority Tax Claims (set forth in Articles II and III of the Plan) have not been classified and are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code.

2.     Classes of Claims and Interests

Classes 1, 2, 3, 4 and 5 are Impaired and entitled to vote on the Plan.  Plan Proponent intends to solicit acceptances of the Plan from Holders of such Claims.

Plan Proponent intends to seek confirmation of the Plan and to take all steps necessary to cause the

Effective Date to occur as soon as practicable. There can be no assurance, however, as to when the Effective Date will actually occur. Procedures for the Distribution of Cash pursuant to the Plan, including matters that are expected to affect the timing of the receipt of Distributions by Holders of Allowed Claims in certain Classes and that could affect the amount of Distributions ultimately received by such Holders, are described more fully in Section G below, entitled "PROVISIONS COVERING DISTRIBUTIONS".

C.    Classification and Treatment of Claims and Interests

Section 1123 of the Bankruptcy Code requires that, for purposes of treatment and voting, a Chapter 11 plan divide the different claims against, and interests in a debtor into separate classes based upon their legal nature. In accordance with section 1123 of the Bankruptcy Code, claims of a substantially similar legal nature are usually classified together, as are shareholder interests which give rise to the same legal rights; the "claims" and "interests" themselves, rather than their holders, are classified.

Under a Chapter 11 plan, the separate classes of claims and interests must be designated either as "impaired" or "unimpaired" by the plan. If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan (unless the plan provides for no distribution to the holders, in which case, the holder is deemed to reject the plan), and the right to receive under the Chapter 11 plan property of a value that is not less than the value the holder would receive if the debtor were liquidated under Chapter 7.

1.    Unclassified Claims

The Bankruptcy Code does not require classification of certain priority claims against a debtor. In this Chapter 11 Case, these unclassified claims include Administrative Expense Claims, among others. All Distributions referred to below that are scheduled for the Distribution Date will be made on the Distribution Date or as soon as practicable thereafter, unless otherwise agreed to in writing by the Holders of any unclassified claims.

(a)    United States Trustee Claims, Administrative Expense Claims and Priority Tax Claims: Claims of the Office of the United States Trustee, which arise under 28 U.S.C. § 1930, together with any interest thereon pursuant to 31 U.S.C. 3717, to the extent not paid in the normal course during this Chapter 11 case, will be paid from the Sales Proceeds from the sale of the Property, from available Cash, from the prosecution of Causes of Action, if any, or if Myrtle Funding is the Successful Bidder on a Credit Bid, by Myrtle Funding, from available Cash and from Causes of Action on the Distribution Date.

Administrative Expense Claims are the actual and necessary costs and expenses incurred in connection with the Chapter 11 Case that are allowed under section 503(b) of the Bankruptcy Code. These expenses typically may include post-petition amounts owed to vendors providing goods and services to a debtor during the Chapter 11 case, and other obligations incurred after the filing date, including the actual, reasonable fees and expenses incurred during the Chapter 11 Case of the Debtor's Professionals. Plan Proponent believes the Administrative Expense Claims of Professionals include only the fees and expenses of (i) Plan Proponent counsel, Ravert PLLC, which fees are subject to Court approval pursuant to a properly filed substantial contribution motion, and which are expected to be approximately $30,000 and are made part of Myrtle Funding's Allowed Secured Claim, (ii) Debtor's bankruptcy counsel, Courtney Davy, Esq., for services rendered to the Debtor and its Estate during the Chapter 11 Case, which fees are subject to Court approval, provided however that Plan Proponent reserves intends to object to any fee request that exceeds $10,000 given the modest amount of services rendered thus far in this Case; and (iii) the reasonable expenses

of the Plan Administrator under the Plan. All Allowed Administrative Expense Claims, to the extent not paid in the normal course during this Chapter 11 case, will be paid from the Sales Proceeds from the sale of the Property, from available Cash, and from the prosecution of Causes of Action, if any, or if Myrtle Funding is the Successful Bidder on a Credit Bid, by Myrtle Funding, from available Cash, and Causes of Acrtion on the Distribution Date. The auctioneer's fee, if the Property goes to auction, would be paid by the Successful Bidder as a buyer's premium. For the avoidance of doubt, although Myrtle Funding's claim include a claim for post-petition legal fees and/or protective advances pursuant to section 506(b) of the Bankruptcy Code, a substantial contribution motion pursuant to section 503(b) of the Bankruptcy Code or otherwise, such substantial contribution claim remains subject to court approval and is treated for the purposes of the Plan as part of such claimholder's prepetition claim and is to be paid in accordance with its respective Class treatment.

Allowed Priority Tax Claims to the extent not paid in the normal course during this Chapter 11 case, will be paid from the Sales Proceeds from the sale of the Property, from available Cash, from the prosecution of Causes of Action, if any, or if Myrtle Funding is the Successful Bidder on a Credit Bid, by Myrtle Funding, from available Cash and Causes of Action on the Distribution Date.

The Plan Proponent estimates that the above-mentioned unclassified Claims will total approximately $65,000 or $70,000 as of the Effective Date, which figure includes U.S. Trustee fees of approximately $20,000 to $25,000 (which is estimated through a Closing since that's when the bulk of these fees will accrue), $14,000 in filed IRS claims, approximately $20,000 in municipal tax claims, $10,000 in professional fees *but such unclassified Claims do not include* Plan Proponent's legal fees and expenses addressed as part of the treatment of Class 2 (which itself includes a substantial contribution claim), the Allowed Myrtle Funding Secured Claim.

All payments to Professionals for compensation and reimbursement of expenses will be made in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules relating to the payment of interim and final compensation and expenses. The Bankruptcy Court will review and determine all such requests, after notice to creditors and a hearing wherein the Debtor and other parties-in-interest may participate, and if appropriate, object to the allowance thereof.

At this time, there has been no disclosure of potential Chapter 11 Administrative Expenses of the Debtor's professionals. However, the Plan provides that on or before three (3) Business Days after the Effective Date, each professional retained in the Chapter 11 Case shall submit an estimate of such professional's Administrative Expense Claim through such date to (a) the Plan Proponent's counsel, Ravert PLLC, 116 West 23 Street, Suite 500, New York, NY 10011, Attn: Gary O. Ravert, Esq; and (b) the United States Trustee for the Eastern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014. The Court will establish a final date by which all final applications Administrative Expense Claims and substantial contribution motions must be filed.

Each Administrative Expense Claim Claimant who seeks allowance of an Administrative Expense Claim (a) that is not incurred in the ordinary course of the Debtor's business, which Claim should be paid in the ordinary course, (b) that is not allowed by a Final Order, and that fails to timely and duly file a proof of its Administrative Expense Claim, or (c) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall NOT be treated as a creditor with respect to such claim for the purposes of receiving any Distribution in connection with such Administrative Expense Claim. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an

Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date.

2.    Classified Claims and Interests

(a)    Class 1- Allowed Priority Claims - Class 1 consists of the Allowed Priority Claims that are not tax claims.  There were no non-tax Priority Claims scheduled by the Debtor in the Schedules and as of the date hereof none have been filed.  To the extent such Claims are filed and become Allowed Claims, they shall be paid Pro Rata up to in full from the Sales Proceeds, available Cash and Causes of Action, or, if Myrtle Funding is the Successful Bidder on its Credit Bid in the amount of $3,986,916.27, then from Myrtle Funding up to the amount of the Creditor Fund, available Cash and the Causes of Action, if any.  The Plan Proponent does not believe there are or will be any other Priority Claims.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5.  The holder of any Priority Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata Distribution from any available Cash and Causes of Action up to payment in full.

Full Settlement - The treatment and consideration to be received by Allowed Priority Claims shall be, subject to the terms hereof, in full settlement and final satisfaction of such Claims against the Debtor.

Class 1 is Impaired under the Plan and is entitled to vote.

(b)    Class 2 – Allowed Myrtle Funding Secured Claim – Class 2 consists of the Allowed Myrtle Funding Secured Claim in the prepetition amount of $3,795,916.27 as of the Filing Date, plus post-petition interest of approximately $160,000 as of August 31, 2019, plus advances, plus postpetition legal fees in the amount of approximately $30,000, all as allowed by the Court pursuant to section 506(b) of the Bankruptcy Code and pursuant to a properly filed substantial contribution motion, for a total estimated prepetition claim of approximately as of August 31, 2019.  Myrtle Funding shall file a substantial contribution motion with the Court for all postpetition legal fees and expenses it seeks within three (3) Business Days of the Effective Date.

In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant to its Credit Bid, Myrtle Funding shall take title to the Property subject to any valid leases therein in full satisfaction of its pre- and postpetition claims against the Debtor and the Debtor's estate.  In that case, Myrtle Funding shall pay in full, in Cash, on the Distribution Date, the Allowed Claims in Articles II and III of the Plan.  Further, Myrtle Funding shall fund in Cash no later than the Distribution Date the $25,000 Creditor Fund plus available Cash, plus proceeds of Causes of Action which Fund shall be held in a segregated bank account for funding Claims in Classes 1 and 3, and 4, and if paid in full, Class 5.  In the event the Successful Bidder is a Cash bidder, Myrtle Funding shall be paid in full from the Sales Proceeds.

Any objection to the Myrtle Funding Secured Claim, including any Administrative Claim filed by Myrtle Funding, shall be filed with the Court no later than 5:00 PM, three business days prior to Closing.  In the event that there is no timely objection to Myrtle Funding's Claim, and if the Myrtle Funding is not the Successful Bidder, then Myrtle Funding shall be paid in Cash from the Sales Proceeds at the Closing the prepetition amount of $3,795,916.27, plus post-petition amounts due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code, plus the full amount set forth in its Myrtle Funding Substantial Contribution Claim for an approximate amount of $3,986,916.27 as of August 31, 2019.  In the event there is a timely filed objection to the Myrtle Funding Secured Claim, then funds in an amount equal to the Disputed Amount shall be placed in the Disputed Claim Reserve to be held by Plan Administrator's attorney, Ravert PLLC, in its attorney escrow account and shall only be distributed in accordance with Article X of the Plan.

Full Settlement - The treatment and consideration to be received by Myrtle Funding shall be, subject to the terms of the Plan, in full settlement and final satisfaction of all of its Claims against the Debtor and this estate.

Class 2 is Impaired under the Plan and is entitled to vote.

(c)    Class 3 – Allowed Claim of the Receiver  -  Class 3 consists of the Allowed Claim of the Receiver, which is estimated to be in the amount of approximately $50,000 as of August 31, 2019 and which is asserted as a secured claim secured by the proceeds of the Property.

In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, then there will be no cash Sales Proceeds above the Allowed Myrtle Funding Secured Claim thereby rendering the Receiver Claim unsecured to the extent there is no available Cash.  The Receiver Claim shall be first paid from available Cash, if any, up to in full.  In the event the Allowed Claim of the Receiver is not paid from the Sales Proceeds or available Cash, the unsecured balance of the Receiver Claim will be paid after payment in full of Class 1 Priority Claims, and will be paid Pro Rata along with holders of Class 4 Claims, up to in full, from the Creditor Fund of $25,000 to be funded by Myrtle Funding, available Cash, and recoveries from Causes of Action.  Any amount still owing to the Receiver after payment as outlined above, shall be paid directly by Myrtle Funding.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, the available Cash, and Causes of Action after payment in full on the Distribution Date of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim, including post-petition amounts due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code and the full amount set forth in its Myrtle Funding Substantial Contribution Claim, then to the extent the Receiver  Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and available Cash.  If there are insufficient Sales Proceeds and Cash to pay the Receiver Allowed Secured Claim in full, then, Myrtle Funding shall fund the Creditor Fund in in the amount of $5,000, which along with available Cash and Causes of Action recoveries, will be used for Distributions to Class 1 Claims first and then Pro Rata to unsecured creditors in Classes 3 and 4.  Any amount still owing to the Receiver after payment as outlined above, shall be paid directly by Myrtle Funding.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5.

Full Settlement - The treatment and consideration to be received by the Receiver shall be, subject to the terms of the Plan, in full settlement and final satisfaction of all of its Claims against the Debtor.

Class 3 is Impaired under the Plan and is entitled to vote.

(d)    Class 4 – General Unsecured Claims  -  Class 4 consists of all Allowed General Unsecured Claims.  The Debtor Scheduled no General Unsecured Claims.  One such claim was filed:  Con Edison in the amount of $828.05.  As of the date hereof, there were no other General Unsecured Claims filed or scheduled by the Debtor in the Schedules.

In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, then Myrtle Funding shall fund the Creditor Fund in the amount of $25,000, plus available Cash, plus recoveries from Causes of Action for payment to Class 1 up to in full and then Pro Rata Distributions to Classes 3 and 4 up to payment in full of all Allowed Claims in such Classes.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds plus available Cash, plus Causes of Action, after payment in full on the Distribution Date of the unclassified Allowed Claims in Articles II and III of the Plan, and payment of the Allowed Myrtle Funding Secured

Claim, including post-petition amounts due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code and the full amount set forth in its Myrtle Funding Substantial Contribution Claim, then to the extent the Receiver Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and available Cash.  If there are still insufficient Sales Proceeds to pay the Receiver Allowed Secured Claim in full, then, Myrtle Funding shall fund the Creditor Fund in the amount of $5,000, plus available Cash, plus Causes of Action for payment to Class 1 first and then Pro Rata Distribution to the Allowed Claims in Classes 3 and 4.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5.

 Full Settlement - The treatment and consideration to be received by the General Unsecured Claims shall be, subject to the terms hereof, in full settlement and final satisfaction of all of their Claims against the Debtor.

 Class 4 is Impaired under the Plan and entitled to vote.

 (e) Class 5 – Interests Class 5 consists of Allowed Interests in the Debtor.  In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, then Myrtle Funding shall fund the Creditor Fund in the amount of $25,000, plus available Cash, plus Causes of Action for payment of Class 1 Claims up to in full and then Pro Rata to Classes 3 and 4 up to payment in full of all Allowed Claims in such Classes.  Class 5 Interests shall only receive excess Sales Proceeds after payment in full of all unclassified Claims set forth in Article II and III, and after Classes 1, 2, 3, and 4 are paid in full or as set forth herein.

 In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, available Cash and Causes of Action, after payment in full on the Distribution Date of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim, including post-petition amounts due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code and the full amount set forth in its Myrtle Funding Substantial Contribution Claim, then to the extent the Receiver Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and available Cash.  If there are insufficient Sales Proceeds plus available Cash to pay the Receiver Allowed Secured Claim in full, then, Myrtle Funding shall fund the Creditor Fund in the amount of $5,000, plus available Cash, plus Causes of Action recoveries for payment of Class 1 up to in full and then for Distribution Pro Rata to the Allowed Claims of in Classes 3 and 4.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4 and 5.  The holder of any Claims in Classes 1, 3, and 4, the extent they are Allowed Claims, shall be entitled to a Pro Rata Distribution from any Causes of Action up to payment in full, and Class 5 shall not be entitled to any Distribution unless and until Classes 1, 3, and 4 and paid in full with interest  at the Federal Judgment Rate.

 Full Settlement - The treatment and consideration to be received by Holders of Allowed Interests in Class 5 shall be, subject to the terms hereof, in full settlement and final satisfaction of their respective Interests to the extent of the Distributions provided for herein on account of such Interests.

 Class 5 is an Impaired Class under the Plan and entitled to vote.

 D. Sources of Cash To Make Plan Distributions

 Except as otherwise provided in the Plan or the Confirmation Order all Cash necessary for Debtor to

make Distributions and payments required under the Plan to Holders of Allowed Claims will be paid by the Plan Administrator from the proceeds of the Auction and sale of the Property, from the available Cash proceeds from the Property, and/or recoveries from Causes of Action as required. Notwithstanding the foregoing, if Myrtle Funding is the Successful Bidder based on a credit bid and the bankruptcy estate is determined administratively insolvent, the unclassified Claims, Administrative Expense Claims and the Receiver Claim shall be paid in accordance with the Plan by Myrtle Funding.

E. Unexpired Leases and Executory Contracts

1. _Generally._ Under section 365 of the Bankruptcy Code, the Debtor has the right, subject to Bankruptcy Court approval, to assume or reject executory contracts or unexpired leases. If an executory contract or unexpired lease entered into before the Filing Date is rejected by the Debtor prior to entry of the Confirmation Order, it will be treated as if the Debtor breached such contract or lease on the date immediately preceding the Filing Date, and the other party to the agreement may assert a General Unsecured Claim for damages incurred as a result of the rejection.

2. _Assumption and Rejection._ The Plan provides in Article VIII that as of the Effective Date, any executory contract or unexpired lease, except for the Assumed Tenant Leases, that has not been expressly assumed or rejected with approval by order of the Bankruptcy Court shall be deemed to have been assumed and assigned as part of the sale unless (a) there is then pending before the Bankruptcy Court a motion to reject such unexpired lease or executory contract, or (b) the Bankruptcy Court has entered an order extending the period during which a motion may be made to reject such unexpired lease or executory contract, and such a motion is filed with the Bankruptcy Court before the expiration of such period. All Assumed Tenant Leases will be deemed to be assumed and assigned to the Successful Bidder or Back-up Bidder, as the case may be, as of the date of the Closing. The Disclosure Statement and the Plan shall constitute due and sufficient notice of the intention to assume all executory contracts and unexpired leases except for any that are not rejected or pending rejection. The Confirmation Order shall be deemed an order under section 365(a) of the Bankruptcy Code rejecting any such executory contracts and unexpired leases, if any, that are expressly rejected in the Plan. The Confirmation Order will include provisions for the assumption and assignment of the Assumed Tenant Leases.

**3. Bar Date for Rejection Damage Claims. Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Plan must be filed with the Bankruptcy Court on or before 30 calendar days after entry of an order rejecting such executory contract or unexpired lease with a copy thereof upon (a) Plan Proponent's counsel, Ravert PLLC, 116 West 23 Street, Suite 500, New York, NY 10011, Attn: Gary O. Ravert; (b) counsel for the Debtor, Courtney Davy, Esq., 305 Broadway, Suite 1400, New York, NY 10007; and (c) the United States Trustee for the Eastern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014.**

**Any Entity that fails to file and serve its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, the Plan Administrator, the Post-Confirmation Estate or any Property or interests in Property of the Debtor, the Plan Administrator, or the Post-Confirmation Estate. All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 4) under the Plan.**

F.  Means For Effectuating The Plan

1.  Auction Sale of the Property

(a)  The Plan is predicated upon the Bankruptcy Court entering the Confirmation Order, which, among other things, authorizes and approves the Auction Sale Procedures, and authorizes the Auction of the Property in accordance with the terms of the Plan and the Auction Sale Procedures, which are attached as Exhibit A to the Plan, which procedures shall govern all aspects of the sale, authorizes the Closing of the Sale to successful purchaser or the Successful Bidder or Back-up Bidder, as appropriate, and authorizes the transfer of the Property to the successful purchaser or Successful Bidder or Back-up Bidder without further court order, fees and clear of all liens, claims, and encumbrances pursuant to section 1123(a)(5)(D) and grants the purchaser the benefit of section 1146 of the Bankruptcy Code with respect to transfer taxes.

(b)  As of the entry of the Confirmation Order, Myrtle Funding shall be the Plan Administrator.  Within three business days of entry of the Confirmation Order, the Plan Administrator shall retain MYC & Associates as auctioneer and, manager if the Plan Administrator chooses to do so, a separate property manager for the Property so as to maintain, preserve, prepare such Property for marketing and Auction.  The Property shall be marketed for no less than 60 days after the MYC & Associates.

(c)  Unless otherwise provided herein, the Plan Administrator and the Auctioneer shall, in accordance with the Auction Sale Procedures, auction the Property and proceed to Closing with the winning bidder.  If no higher and better bid than the Credit Bid is received, the Plan Administrator shall close on the sale of the Property to Myrtle Funding based on its Credit Bid.  Any disputes concerning Qualified Bidders, Successful Bidders or Back-up Bidders will be resolved by the Bankruptcy Court.

(d)  Myrtle Funding is deemed a Qualified Bidder and shall open the auction with an Opening Bid of $3,986,916.  Such amount is a credit bid.  To the extent such amount is disallowed in whole or in part, Myrtle Funding shall make up the disallowed portion of its Credit Bid in cash.  If Myrtle Funding shall be the Successful Bidder or otherwise entitled to acquire the Property in accordance with the Auction Sale Procedures, it shall have the right to assign its successful Credit Bid and its right to close thereunder prior to or at the Closing.  Any such assignee shall be entitled to all of the rights of Myrtle Funding under the Plan, including but not limited to the right to take title to the Property free and clear of any and all (i) Liens, Claims and encumbrances, (ii) Transfer Taxes, and (iii) any anti-assignment provisions under any assigned contracts or applicable law.  Myrtle Funding shall then, as set forth in the Plan, pay all such Claims and fund the Creditor Fund as required by the Plan.

(e)  If the Property is sold for Cash or a Cash bidder is the Successful Bidder or Back-up Bidder, than the Plan Administrator shall close with such bidder and such bidder shall tender the full purchase price and pay the broker's fee as set forth in the Auction Sale Procedures and it shall take title to the Property free and clear of any and all (i) Liens, Claims and encumbrances, (ii) Transfer Taxes, and (iii) any anti-assignment provisions under any assigned contracts or applicable law.  The Sales Proceeds, plus available Cash, plus recoveries from Causes of Action shall be used to satisfy Claims as set forth in the Plan and, to the extent set forth in the Plan, Myrtle Funding shall if required fund the Creditor Fund.

(f)  The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, authorizing and directing the Plan Administrator (and/or Plan Proponent to the extent not performed by the Plan Administrator) to execute or deliver or to join in the

execution or delivery of any and all instruments necessary to effectuate the transfer of the Property and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, and for Plan Proponent to be authorized and directed to do so in the event Plan Administrator fails or refuses to do so.

      (f)    Pending the Closing of the sale of the Property, the Plan Administrator shall be authorized and directed (either personally or through its designee, property manager and/or auctioneer) to continue to maintain and preserve the Property in all respects and in accordance with the terms hereof.

      (g)    Notwithstanding anything contained herein or in the Auction Sale Procedures to the contrary, the Entity acquiring the Property shall assume and be fully responsible and liable, as appropriate, for evicting or otherwise removing any tenants, subtenants or other persons renting, using or occupying the Property, including any of their personalty, from and after the date of the Closing.

      2.    <u>Transfer Taxes.</u>  The consummation of the Closing for the Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such sale, transfer and delivery of any and all instruments of transfer, without limitation, in connection therewith shall not be taxed under any Transfer Taxes, stamp tax, real estate transfer tax, mortgage recording tax or similar tax and to the extent permitted by §1146(a) of the Bankruptcy Code shall not be subject to any state, local, or federal law imposing sales tax. Such exemption shall include any transfer of the Property and the Myrtle Funding Cash Collateral to Myrtle Funding or its designee or to the Successful Bidder if it is not Myrtle Funding.

      3.    <u>Transfer of Assets.</u>  At the Closing for the Property, the successful purchaser or Successful Bidder or the Back-up Bidder shall receive (w) the transfer of deed to the Property and assignments of any leases in connection therewith, executed by the Plan Administrator for and on behalf of the Post-Confirmation Estate, the Debtor and its Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (x) together with any and all New York State and other governmental transfer tax returns; and (y) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the recording of the deed to reflect the Bankruptcy Code section 1146(a) exemption, and to effectuate the transfer of the Property. The Plan Administrator and Plan Proponent do not make any representations or warranties whatsoever in connection with the Property. The Property is being sold pursuant to the Plan "AS IS", "WHERE IS" in its condition on the Closing Date without any representations, covenants, guarantees or warranties by the Plan Administrator or Plan Proponent of any kind or nature whatsoever, and free and clear of any Liens, claims or encumbrances of whatever kind or nature accrued through the date of the Auction (including, without limitation, any leases or use and occupancy agreements relating to the Property other than the Assumed Tenant Leases), with such Liens, claims, or encumbrances, if any, to attach to the proceeds of sale, and subject to any Liens, claims or encumbrances of whatever kind or nature thereafter accrued as of the date of the Auction. Any such Liens, claims or encumbrances of whatever kind or nature accruing from and after the Closing shall be the responsibility of the Entity acquiring the Property at the Closing in accordance with the terms of the Plan and Auction Sale Procedures.

      4.    <u>Cooperation of the Debtor's Principals.</u> The Debtor, Debtor's principal(s) and the Debtor's authorized signatories shall, at all times, reasonably cooperate with the Plan Administrator and Plan Proponent or such other Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns in connection with the Auction, any Closing for the sale of any Property, and the

administration of the Post-Confirmation Estate.

5.    <u>Funding.</u>    The funds needed to pay all U.S. Trustee Fees, Allowed Administrative Expense Claims, and Allowed Priority Tax Claims will be paid in accordance with the Plan by either Myrtle Funding if it is the Successful Bidder, plus available Cash and recoveries from Causes of Action, or if the Successful Bidder is a Cash bidder from the Sales Proceeds, available Cash, and/or from the Causes of Action and other Property of the estate, in each case as set forth in the Plan.  The Allowed Myrtle Funding Secured Claim (Class 2) will be paid at the Closing in accordance with the terms of the Plan, including the Auction Sale Procedures.  For the avoidance of doubt, if Myrtle Funding is the successful bidder based on a Credit Bid and the Debtor's bankruptcy estate is determined administratively insolvent the U.S. Trustee fees, Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall be paid in full by Myrtle Funding.

6.    <u>Management of the Debtor.</u> On and after the Effective Date, the Post-Confirmation Estate will be managed and administered by the Plan Administrator and her designee property manager and/or Auctioneer and the operations of the Debtor shall cease and the Debtor and its principal and signatories and representatives or agents shall have no further authority with respect to the Property or any property of this estate.

7.    <u>Execution of Documents.</u> The Plan Administrator and/or Plan Proponent shall execute, release and deliver, for and on behalf of the Post-Confirmation Debtor and its Estate, all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan, including without limitation, any documents required in connection with the Closing and the sale of the Property in accordance with the Plan.

8.    <u>Filing of Documents.</u> Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including but not limited to the Confirmation Order, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

9.    <u>Transactions on Business Days.</u>  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

10.    <u>Implementation.</u>    Pursuant to the Confirmation Order and upon confirmation of the Plan, the Plan Administrator and/or Plan Proponent, as appropriate, shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and provisions of the Plan including but not limited to taking possession and control of the Property, the Debtor's bank accounts, rental income or other proceeds of the Property, and any Causes of Action to which the Debtor may have been party.  On or before the Effective Date, the Plan Administrator may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.  Upon the completion of all acts required to be performed by the Plan Administrator under the Plan and/or the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the

application for entry of the final decree), the Plan Administrator shall be relieved of its duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Administrator, the Post-Confirmation Estate, or payments to be made in connection therewith. From and after the Effective Date, the Post-Confirmation Estate and the Plan Administrator shall not be required to file any document, or take any action, to withdraw the Post-Confirmation Debtor's business operation from any States where the Debtor previously conducted business operations.

11.    Preservation and Vesting of Claims, Rights, Demands and Causes of Action. Pursuant to section 1123 of the Bankruptcy Code, the Plan Administrator, shall be vested with, shall retain, and/or shall have the authority to prosecute and enforce any and all Causes of Action including Avoidance Actions, claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands and without limitation Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor, its Estate, the Post-Confirmation Debtor, the Plan Administrator and/or the Post-Confirmation Estate. The Plan Administrator will also be authorized to challenge, object to and/or settle disputed Claims, without first having to seek approval from the Bankruptcy Court, in accordance with the terms and provisions hereof. The Plan Administrator will be authorized and empowered to bind the Post-Confirmation Estate thereto. Any settlement by the Plan Administrator for the benefit of the Post-Confirmation Estate, pursuant to and in accordance with the terms hereof shall be conclusively deemed to be in the best interests of the Post-Confirmation Estate.

12.    Recoveries. All Cash, proceeds and/or recoveries from the Avoidance Actions and Causes of Action and all other proceeds derived from the Post-Confirmation Estate and liquidation of the Post-Confirmation Estate Assets will be included in the Post-confirmation Estate and administered and disbursed in accordance with the provisions of the Plan.

13.    Reporting Requirements. The Plan Administrator shall prepare and maintain Distribution schedules with respect to all Classes of Claims. When all objections to all Claims have been resolved by a Final Order or otherwise in accordance with the terms hereof, and all Post-Confirmation Estate Assets have been converted to Cash or abandoned, the Plan Administrator shall compute the final Pro Rata share of all Claimants and distribute the Cash on the Distribution Date. Approximately ninety (90) days following the Effective Date, the Plan Administrator shall file with the Bankruptcy Court and serve on the U.S. Trustee and those parties who have requested special notice Post-Confirmation, a status report and a summary financial update explaining what progress has been made toward entry of the Final Decree, including a statement of all disbursements made pursuant to the Plan along with an estimated date when an application for a Final Decree will be filed with the Bankruptcy Court. Until entry of the Final Decree, if any further assets exist for liquidation and have not been abandoned, or if there are further Distributions to be made, then further status reports including a statement of all disbursements made pursuant to the Plan shall be filed periodically approximately every ninety (90) days and served on the same entities. Each status report shall generally include a description of Post-Confirmation Estate Assets sold or otherwise realized upon during the relevant period, gross and net proceeds received, Distributions and payments made, expenses incurred and paid, and cash on hand. A standard Post-Confirmation Operating Report as required by the U.S. Trustee shall meet the requirements of this status report.

14.    Post-Confirmation Debtor. Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor. The Debtor may dissolve after, and only after, the entry of a Final Decree if it so desires. The Debtor's principal(s) shall be responsible for preparing

or causing to be prepared all local, state, or federal tax returns, filings, and/or reports that are necessary or appropriate. Neither the Plan Administrator, nor the Plan Proponent, nor Myrtle Funding shall have any responsibilities of any type to the Debtor or the Post-Confirmation Debtor.

15.    Prosecution of Objections to Claims; Amendment of Schedules. The Plan Administrator, and the Plan Proponent until the Effective Date, reserves the right and shall continue to have the authority, subsequent to the Confirmation Date but prior to the case being closed, to object to any Claim or request for allowance of an Administrative Expense Claim, whether included on the Debtor's Schedules or reflected in a proof of claim filed with the Bankruptcy Court, and to initiate contested matters and to initiate such proceedings as may be necessary and appropriate in the Bankruptcy Court for a determination of the Allowed Amount of any and all Claims or requests for allowance of Administrative Expense Claims in accordance with the terms hereof.

G.    Provisions Covering Distributions

1.    Post-Confirmation Estate. Except as otherwise provided in the Plan, on the Effective Date all of the Property of the estate, including the real property, and any other Property of the Debtor without limitation shall vest in the Plan Administrator pending the Closing, at which Closing the deed to the Property and any leases in connection therewith shall be transferred to the acquiring Entity. From time to time thereafter, other assets may be transferred to the Plan Administrator on behalf of the Post-Confirmation Estate and, upon conversion thereof to Cash, will be deposited into the Plan Administrator's Distribution account and distributed to Holders of Allowed Claims and Interests in accordance with the terms and provisions of the Plan.

2.    Timing of Distributions Due Under Plan. All Distributions and payments required under the Plan to Holders of Allowed Claims and Interests will be paid from the Post-Confirmation Estate on the Distribution Date in the manner indicated in the Plan. Subject to the terms of the Plan, the distributions on Allowed Claims and Interests will take place on the Distribution Date, which follows the Closing.

3.    Manner of Distributions. At the option of the Plan Administrator Distributions from the Post-Confirmation Estate may be made by wire transfer, check, or such other method as the Plan Administrator deems appropriate under the circumstances. No Distributions shall be required to be made to any Holder of an Allowed Claim in an amount less than five ($5.00) dollars, unless request is made, in writing, to the Plan Administrator.

4.    Cash Payments. Cash payments made pursuant to the Plan will be in U.S. dollars and paid by check or electronic transfer. Cash payments made pursuant to the Plan in the form of checks issued by the Plan Administrator shall be void if not cashed within one hundred twenty (120) days of the date of the issuance. Requests for reissuance of any check shall be made directly to Plan Administrator as set forth in Section 10.8 of the Plan.

5.    Disputed Claims Reserve.

a)    Contemporaneously with the Closing on the Property, or as soon thereafter as the Plan Administrator shall determine, the Plan Administrator shall establish the Disputed Claims

Reserve. For purposes of establishing the Disputed Claims Reserve, the Plan Administrator shall reserve for each Disputed Claim at the maximum amount at which each such Claim may be allowed and paid given the funds available. On the Distribution Date, the Plan Administrator shall deposit into the Disputed Claims Reserve Cash in an amount equal to the amount that would be distributable to all Holders of Disputed Claims in respect of all Distributions made on that date if such Disputed Claims were Allowed, provided however, that the maximum amount to be reserved will be limited to the funds available as set forth in the Plan. The reserve for any Dispute over a Claim held by Myrtle Funding shall be held by the Plan Proponent's counsel, Ravert PLLC, in its IOLTA account pending Allowance. The Plan Administrator shall maintain the Disputed Claims Reserve in a segregated, interest bearing account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim. The Plan Administrator shall pay any taxes due and owing with respect to the Disputed Claims Reserve, and reserve all Distributions on account of the Disputed Claims, net of such taxes.

b)    In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim shall never exceed the maximum amount allocated to such claim in the Disputed Claims Reserve and the Plan Administrator shall distribute to the Holder of such Allowed Claim from the Disputed Claims Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Distribution Date.

c)    To the extent funds in the Disputed Claims Reserve become available to other Claims because such funds are no longer reserved for a Claim that was Allowed in a lesser amount, such funds may be allocated to other Claims as set forth in the Plan.

6.    Payment of Statutory Fees. All fees payable pursuant to 28 U.S.C. § 1930, together with any interest thereon pursuant to 31 U.S.C. 3717, as determined by the Bankruptcy Court as of the Confirmation Date, to the extent not previously paid by the Debtor, shall be paid by the Plan Administrator from the operating income of the Post-Confirmation Estate pending the Closing on the Sale of the Property and, upon the Closing, from the proceeds of the Sale, available Cash and/or other estate assets. If Myrtle Funding is the Successful Bidder based on a Credit Bid and the Debtor's bankruptcy estate is determined administratively insolvent the statutory fees pursuant to 28 U.S.C. §1930, together with any interest thereon pursuant to 31 U.S.C. 3717, shall be paid in full by Myrtle Funding. After the Effective Date, all fees pursuant to 28 U.S.C. § 1930, together with any interest thereon pursuant to 31 U.S.C. 3717, shall be paid by the Plan Administrator until the earlier of the entry of the Final Decree or an order of conversion or dismissal.

7.    Interest on General Unsecured Claims. Holders of Allowed General Unsecured Claims under Class 4 of the Plan shall only receive interest in the amount of the Federal Judgment Rate on any Distribution to which such Holder would be entitled hereunder, if and only if, there are sufficient funds for Distribution that would otherwise go to Class 5 Interests.

8.    Withholding of Taxes.

a)    The Plan Administrator may withhold from any Cash or property to be distributed under the Plan any amount which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Plan Administrator may request that the Holder of any Allowed Claim provide such Holder's

taxpayer identification number and such other certification or documentation as may be deemed necessary to comply with applicable tax reporting and withholding laws.

b) Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

9.    Undeliverable or Unclaimed Distributions.

a)    All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Schedules or in the Claims Register in this Case unless the Plan Administrator has been notified in writing after the Effective Date of a change of address. Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Plan Administrator for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Plan Administrator to reissue such check, and (ii) provides the Plan Administrator with such documentation as the Plan Administrator requests to verify in her/his sole discretion that such Entity is entitled to such check. If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution provided for in such check. Any such forfeited Distributions shall revert to the Plan Administrator on behalf of the Post-Confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

b)    In the event that any Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distributions will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address. All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Plan Administrator and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary. Upon such forfeiture of Cash or other Post- Confirmation Estate property, such Cash or Post-Confirmation Estate Assets shall be the property of the Post-Confirmation Estate and the Post-Confirmation Estate and the Plan Administrator shall have no further obligation to such Holder.

10.    Post-Effective Date Services by Professionals. The Professionals retained by the Debtor shall continue to be retained subsequent to the Effective Date, subject to the direction of the Plan Administrator, for the purpose of rendering services as necessary to consummate the Plan as the Plan Administrator deems necessary.

The reasonable fees and expenses of the Plan Administrator and his/her Professionals incurred after the Confirmation Date shall constitute Operating Expenses of the Post-Confirmation Estate and shall be payable from available Cash upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Plan Administrator, with a copy to the Office of the United States

Trustee.  The Plan Administrator and U.S. Trustee shall have ten (10) Business Days from the receipt of any such fee and expense statements to dispute all or part of such statement.  Upon the expiration of said ten (10) Business Days, provided there are sufficient funds available in the Post-Confirmation Estate, the Plan Administrator or Estate or its manager shall pay the Professionals the undisputed portion of such fees and expenses.  Any disputes shall be submitted to the Bankruptcy Court for determination.

H.    Procedures For Resolving Disputed Claims

1.    Objections to Claims.    From and after the Effective Date except as otherwise provided in the Plan, only the Plan Administrator shall have the authority to file or litigate to judgment objections to any Claims.  Subject to an order of the Bankruptcy Court providing otherwise, the Plan Administrator may object to a Claim by filing an objection with the Bankruptcy Court and serving such objection upon the Holder of such Claim not later thirty (30) days after the Effective Date or thirty (30) days after the filing of the proof of such Claim, whichever is later, or such other date fixed by the Bankruptcy Court.

2.    Procedure.    Unless otherwise ordered by the Bankruptcy Court, or agreed to by written stipulation of the Plan Administrator, or until such objection is withdrawn, only the Plan Administrator may litigate the merits of each Disputed Claim until a Final Order is entered with respect to such Claim.

3.    Payments and Distributions With Respect to Disputed Claims.  No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim.

4.    Claims Reserve - Estimation.  For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to Holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Effective Date, or such later date as may be established by the Bankruptcy Court and/or the Debtor, pursuant to section 502 of the Bankruptcy Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which event the amount so fixed will be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent or unliquidated amount that such Claim ultimately may be Allowed under the Plan, if such Claim is Allowed in whole or in part. The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims from the Post-Confirmation Estate, regardless of the amount finally Allowed on account of such Disputed Claims, and except as expressly provided for in the Plan no Holder shall have recourse against the Plan Administrator, the Post-Confirmation Estate, the Plan Proponent, the Debtor, Myrtle Funding or any of their respective Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their respective property, as such Holder's sole recovery shall be from the Distributions to be made to Holders of Allowed Claims (subject to any claims that any Holder may have against any guarantors).

5.    Distributions After Allowance of Disputed Claims.    Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan.

6.    Distributions After Disallowance of Disputed Claims.  Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such Holder's Claim, may receive subsequent Distributions if and to the extent that other Claims are disallowed or expunged or as Post-Confirmation Estate Assets are sold and converted to Cash.  Such subsequent Distributions will be included with the next Distributions due

to be paid to Holders of Allowed Claims pursuant to and in accordance with Article V of the Plan.

7.    <u>Setoffs and Recoupments</u>.  Except with respect to Avoidance Actions, and Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Plan Administrator or its designee, as the case may be, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off or recoup against any Allowed Claim, the Distributions to be made pursuant to the Plan on account of such Claim, any Avoidance Actions or Causes of Action of any nature that the Plan Administrator, Debtor, the Post-Confirmation Estate, or the Debtor's successors may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Plan Administrator, the Post-Confirmation Debtor or the Post-Confirmation Estate, or their successors, of any Avoidance Action or Cause of Action that the Plan Administrator, the Plan Administrator on behalf of the Debtor and/or the Post-Confirmation Debtor, the Post-Confirmation Estate, or their successors may possess against such Holder.

I.    <u>Effect of Consummation of The Plan</u>

The Plan provides for the Auction of the Property owned by the Debtor and Distributions of the Post-Confirmation Estate in accordance with the terms and provisions of the Plan.  Pursuant to the Plan, the Plan Administrator is charged with administering the Post-Confirmation Estate in the most reasonably cost-effective manner possible in the shortest reasonable time, with due regard for litigation risks and the risk that undue haste may reduce the liquidation proceeds of any portion of the Post-Confirmation Estate.  In selling or otherwise monetizing the Post-Confirmation Estate the Plan Administrator shall use commercially reasonable efforts to maximize the amount of the net proceeds derived therefrom.

As set forth in Article V of the Plan, Holders in each Class will receive their Pro Rata share of the Cash deposited into the Post-Confirmation Estate and the earnings thereon though same is subordinate to all payments requested to be made to Holders of U.S. Trustee Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims and Allowed Priority Claims.  U.S. Trustee Claims, Allowed Administrative Expense Claims and Allowed Priority Tax Claims will be paid in full as provided for under Articles II and III of the Plan.

J.    <u>Injunction, Release and Exculpation</u>

1.    **<u>Injunction.</u>**

**On and after the Effective Date, each Holder of a Claim against or an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Plan Administrator or the Plan Proponent from implementing the Plan or the Confirmation Order.**

2.    **<u>Exculpation.</u>  Neither the Plan Proponent nor any of their respective officers, directors, members, employees or other agents, financial advisors, attorneys, and accountants shall have any liability to any Holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct, gross negligence,**

**fraud and/or criminal conduct as finally determined by a Final Order of the Bankruptcy Court. Neither the Plan Proponent nor the Plan Proponent shall be liable for a debt of the Debtor, the Debtor's Estate or the Post-Confirmation Estate (as appropriate) solely as a result of its role as Plan Proponent or Plan Administrator.**

### K.  Conditions Precedent To Confirmation Order And Effective Date Of The Plan

1.      _Condition Precedent to Entry of the Confirmation Order._ The following condition must be satisfied on or before the Confirmation Date:  The Confirmation Order must be in form and substance reasonably acceptable to the Plan Administrator and Plan Proponent.

2.      _Conditions Precedent to the Effective Date._  The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective:  The Confirmation Order must be entered by the Bankruptcy Court and become a Final Order.

3.      _Condition Precedent to Consummation._ Upon the Auction having occurred and upon the completion of the Closing, the Plan shall be deemed substantially consummated.

If the Plan has not been consummated in accordance with the terms hereof within one hundred eighty (180) days of the Confirmation Date, or such longer period as may be agreed by the Plan Administrator, the Plan Administrator shall file with the Bankruptcy Court and serve a notice indicating an inability to consummate the Plan and the Bankruptcy Court shall thereafter schedule a hearing to consider the just disposition of the Chapter 11 case.

### L.  Miscellaneous Provisions

1.      _Bankruptcy Court to Retain Jurisdiction._  Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, or the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, without limitation, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

a.  To consider any modification of the Plan under Bankruptcy Code section 1127 and/or modification of the Plan before "substantial consummation" thereof as defined in the Bankruptcy Code;

b.  To hear and determine all controversies, suits, and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

c.  To hear and determine all controversies, suits, and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor or the Plan Proponent or any other party or party in interest, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

d.  To hear and determine all rights or Avoidance Actions or Causes of Action which may exist on behalf of the estate;

e.  To hear and determine all applications for allowance of compensation and expense reimbursement of Professionals for periods prior to the Effective Date;

f.  To hear and determine any and all applications, motions, adversary proceedings,

contested matters or litigated matters;

g.To hear and determine any disputes concerning tenancy, possessory rights, leases and/or any dispute concerning the Property that might otherwise be litigated in landlord tenant court outside of this Bankruptcy Case and this Court shall retain jurisdiction to enter an order of eviction and to authorize the U.S. Marshall to carry out orders of eviction or orders to vacate;

h.  To enter a final decree closing this Chapter 11 Case; and

i.  To the extent not set forth above, to hear and determine any and all disputes, matters, proceedings, or controversies arising under or in connection with the Plan to aid in the administration or consummation of the Plan.

2.  <u>Binding Effect of the Plan.</u>  Nothing contained in the Plan or the Disclosure Statement will limit the effect of confirmation as set forth in Bankruptcy Code §1141.  The provisions of the Plan shall be binding upon and inure to the benefit of the Plan Administrator on behalf of the Post-Confirmation Debtor, the Post-Confirmation Estate, any Holder of a Claim or Interest, and/or their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity affected by the Plan.

3.  <u>Fractional Cents.</u>  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

4.  <u>Successors and Assigns.</u>  The rights and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

5.  <u>Blank Ballots.</u>  Any Ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.  Any Ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

6.  <u>Authorization of Corporate Action.</u>  Upon the entry of the Confirmation Order, all actions contemplated by the Plan will be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the transfer and/or contribution of the Post-Confirmation Estate assets.  On the Confirmation Date, appropriate members or authorized signatories of the Plan Administrator, the Debtor, the Post-Confirmation Debtor and/or the Plan Proponent are authorized and directed to execute and to deliver any and all agreements, documents and instruments contemplated by the Plan, the Post-Confirmation Estate and/or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without the need for any additional authorizations, approvals or consents.

7.  <u>Withdrawal of the Plan.</u>  The Plan Proponent reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan.  If the Plan Proponent revokes or withdraws the Plan, or if the Confirmation Date does not occur, or if the Effective Date does not occur then (a) the Plan will be deemed null and void and (b) the Plan shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed (but which shall not impair Myrtle Funding's right to seek a substantial contribution claim), in such event, the rights of any Holder of a Claim or Interest shall not be affected nor shall such Holder be bound by, for purposes of illustration only, and without limitation, (i) the Plan, (ii) any statement, admission, commitment, valuation or representation

contained in the Plan, the Disclosure Statement, or the Related Documents or (iii) the classification and proposed treatment (including any allowance) of any Claims in this Plan.

        8.    <u>Captions.</u>    Article and Section captions used in the Plan are for convenience only and will not affect the construction of the Plan.

        9.    <u>Method of Notice.</u>  Any notice or other communication hereunder shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended (or, in the case of notice by facsimile transmission or e-mail, when received and telephonically or electronically confirmed), addressed as follows (provided, however, that only one notice or other communication hereunder need be sent to Holders sharing the same address):

**If to the Plan Proponent and/or Plan Administrator:**

461 Myrtle Avenue Funding LLC
c/o Hirshmark Capital LLC
15 West 26th St, Suite 901
New York, NY 10010
Attn: Mark Levin

**With a copy to:**

461 Myrtle Avenue Funding LLC
c/o Ravert PLLC
116 West 23 Street, Suite 500
New York, New York 10011
Attn.: Gary O. Ravert, Esq. ]
Email: gravert@ravertpllc.com

**If to the Debtor:**

Armstead Risk Management, Inc.
2 Hassake Road
Old Greenwich, CT 06870
Attn:  Malike Armstead

**With a copy to:**

Courtney Davy, Esq.
305 Broadway, Suite 1400
New York, NY 10007
Email: courtneydavy.esq@gmail.com

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court.

        10.    <u>Amendments and Modifications to Plan.</u>   With the written consent of the Plan Proponent, the Plan may be altered, amended or modified by the Plan Proponent, before or after the

Confirmation Date, as provided in section 1127 of the Bankruptcy Code provided the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

11.    Section 1125(e) of the Bankruptcy Code.  Confirmation of the Plan will constitute a finding that the Plan Proponent has proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

12.    Entire Agreement.  The Plan, as described herein, and the Disclosure Statement and exhibits thereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed to by the parties in writing.

13.    Post-Confirmation Obligations.    Under current applicable law, the Plan Administrator, for and on behalf of the Post-Confirmation Estate, is required to pay fees assessed against Debtor's Estate under U.S.C. § 1930(a)(6), together with any interest thereon pursuant to 31 U.S.C. 3717, until entry of an order closing the Chapter 11 Case.  Subject to a change in applicable law, the Plan Administrator shall pay all fees assessed against the Estate under 28 U.S.C. §1930(a)(6),  together with any interest thereon pursuant to 31 U.S.C. 3717, from the Post-Confirmation Estate and shall file Post-Confirmation reports including a statement of all disbursements made pursuant to the Plan until entry of an order closing the Chapter 11 Case of Debtor.

## VII. CONCLUSION AND RECOMMENDATION

**BASED ON ALL OF THE FACTS AND CIRCUMSTANCES, THE PLAN PROPONENT CURRENTLY BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR, ITS CREDITORS, AND ITS ESTATES. THE PLAN PROPONENT BELIEVES THAT THE PLAN PROVIDES THE BEST AVAILABLE ALTERNATIVE FOR MAXIMIZING THE RECOVERIES THAT CREDITORS MAY RECEIVE FROM THE DEBTOR'S ESTATE.    THEREFORE, THE PLAN PROPONENT RECOMMENDS THAT ALL CREDITORS AND INTEREST HOLDERS THAT ARE ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

Dated:    August 5, 2019
          New York, New York                    461 Myrtle Avenue Funding LLC

                                                By:/s/ Mark Levin
                                                Name: Mark Levin
                                                Title: Authorized Signatory

                                                Prepared By:

                                                RAVERT PLLC

Dated:    August 5, 2019

New York, New York

By: /s/ Gary O. Ravert

Gary O. Ravert

116 West 23 Street, Suite 500
New York, New York 10011
Tel: (646) 961-4770
Direct Fax: (917) 677-5419
Email: gravert@ravertpllc.com

*Attorneys for Plan Proponent*