**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Suite 500
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for 461 Myrtle Avenue Funding LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ARMSTEAD RISK MANAGEMENT, INC., | Case No. 19-41489 (ESS) |
| *Debtors*. | |

## 461 MYRTLE AVENUE FUNDING LLC'S SECOND AMENDED PLAN OF LIQUIDATION

## INTRODUCTION

461 Myrtle Avenue Funding LLC ("Myrtle Funding" or the "Plan Proponent"), a secured creditor of Armstead Risk Management, Inc., the debtor and debtor in possession in this Chapter 11 Case (the "Debtor"), hereby proposes the following amended Plan of Liquidation (the "Plan") for the resolution of outstanding Claims and Interests pursuant to section 1121(a) of the Bankruptcy Code.  Reference is made to the amended Disclosure Statement dated October 1, 2019 (the "Disclosure Statement ") filed by Myrtle Funding in connection with the Plan.  The Disclosure Statement should be reviewed in connection with voting on the Plan.

## ARTICLE I

### Definitions, Rules of Interpretation,
### Computation of Time and Governing Law

#### A.  Scope of Definitions; Rules of Construction

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in the Introduction, Article I or elsewhere in the Plan.  Any term used in the Plan that is not defined herein or in the Auction Sale Procedures, but is defined in the Bankruptcy Code or the

1

Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

## B. Definitions

1.1     "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of operating the business of the Debtor, and all allowances of compensation or reimbursement of expenses for legal or other professional services to the extent allowed by the Bankruptcy Court under Sections 327, 330, 331 and 503 of the Bankruptcy Code and all fees and charges assessed against the Debtor's estate pursuant to Section 1930 of Title 28 of the United States Code, including those in connection with the Auction and Sale of the Property.

1.2     "Allowed Administrative Claim" means all or that portion of any Administrative Expense Claim which is an Allowed Claim.

1.3     "Allowed Claim" means "Allowed Claim" means any Claim or portion of a Claim ( a) which is scheduled by the Debtor pursuant to Sections 521(a)(1) and l106(a)(2) of the Bankruptcy Code (other than a Disputed Claim); or (b) proof of which had been timely filed with the Bankruptcy Court pursuant to Section 50l(a) of the Bankruptcy Code or on or before the date designated to the Court as the last date for filing Proofs of Claim , and with respect to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or by an Order of the Court; or which, after objection thereto , has been allowed in whole or in part by a Final Order.

1.4     "Allowed Myrtle Funding Secured Claim" means the Allowed Claim held by Myrtle Funding against the Debtor in the amount of $3,795,916.27 as of the Filing Date, plus postpetition interest in the amount of $220,000 as of October 31, 2019 (232 post-Filing Date days multiplied by the asserted amount of approximately $942/day interest), plus postpetition legal fees in the amount of approximately $7,500 pursuant to section 506(b) of the Bankruptcy Code for a total estimated prepetition secured claim of approximately $4,023,816.27 and, subject to the limitations set forth in section 506(a)(l) of the Bankruptcy Code secured by, among other things, a duly recorded first priority Lien on the Property.

1.5     "Allowed Myrtle Funding 503(b) Claim" means the Allowed Claim held by Myrtle Funding against the estate on account of advances, protective payments, legal fees and expenses awarded and allowed by the Court pursuant to a properly filed substantial contribution motion pursuant to section 503 of the Bankruptcy Code, which claim is estimated to be in the amount of approximately $25,000.

1.6     "Allowed Receiver Secured Claim" means Claim No. 8 in the secured amount of approximately $47,000 filed by the state court receiver Gregory LaSpina, Esq. in the state court foreclosure matter pending in New York State Supreme Court for Kings County, Index No. 510329/2017, including but not limited to any legal fees and costs of his counsel in this Chapter 11 Case.

2

1.7    "Allowed CC 86th Street LLC Secured Claim" means that certain recorded judgment from New York State Supreme Court for Kings County, Index No. 651537/2017, held by CC 86th Street LLC against the Debtor in the face amount of $116,387.09 as of 11-27-17, which with interest now totals approximately $140,000.

1.8    "Assumed Tenant Leases" shall mean any and all valid leases, to the extent such lease or leases have not been rejected by a Final Order of this Court, of any tenant, including any antenna leases, with respect to the Property which leases shall be deemed assumed and assigned as part of the sale of the Property, which such sale shall be subject to such leases to the extent they exist.

1.9    "Auction" means the auction for the sale of the Property.

1.10    "Avoidance Actions" means any and all Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, including, without limitation, under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, against any other entity arising before or after the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

1.11    "Ballot" means the voting form distributed to Holders of Claims or Interests in Classes that are Impaired and entitled to vote on the Plan for the purpose of indicating acceptance or rejection of the Plan.

1.12    "Ballot Date" means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of the Plan.

1.13    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101 et seq., and all amendments thereto.

1.14    "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York, located at 271-C Cadman Plaza East, Brooklyn, NY 11201-1800, having jurisdiction over the Chapter 11 Case, or any such other court as may hereafter exercise primary jurisdiction over the Chapter 11 Case.

1.15    "Bar Date" means September 26, 2019 for all Creditors including governmental units as the final date established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c), for filing timely proofs of Claim arising prior to the Filing Date.

1.16    "Broker" means MYC & Associates, or such other broker that the Plan Administrator may choose at any time after the Effective Date in its sole discretion to render all services in connection with the marketing and sale of Property including brokerage, liquidation, valuation and appraisal in connections with same, which Broker shall be entitled to receive a commission, fee or other sum in connection with the marketing and sale of the Property.

1.17    "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.18    "Cash" means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items in each case denominated in United States dollars.

1.19    "Cash Collateral" means, from and after the Filing Date, all present and future rents, cash, funds, revenue, income or other payments for the use and occupancy by any tenants residing in or exercising possession or control over the Property or any portion thereof, including without limitation antenna lease payments, and includes the proceeds, products, offspring, or other profits thereof.

1.20    "Causes of Action" means any and all actions, causes of action, suits, debts, rights to payment and claims under any insurance policies, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including without limitation, Avoidance Actions, the proceeds of which shall be held by the Plan Administrator in a segregated account pending Distribution.

1.21    "Chapter 11 Case" means the Debtor's case under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court under case caption styled *In re: Armstead Risk Management, Inc.,* Case No. 19-41489 (ESS).

1.22    "Claim" means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

1.23    "Claimant" means the holder of a Claim or Interest.

1.24    "Class" means a group of Claims or Interests which are substantially similar in nature and are grouped together for similar treatment pursuant to the Plan.

1.25    "Closing" means the closing of the sale of the Property to the Successful Bidder or, as applicable, the Back-up Bidder (in each case as defined in the Auction Sale Procedures), at which point title to the Property will be transferred in accordance with the terms contained herein, in the Auction Sale Procedures, and in the Confirmation Order.  The Closing, unless ordered otherwise by the Bankruptcy Court or as set forth in the Auction Sale Procedures, shall take place on the Closing Date.

1.26    "Closing Date" means the date of the Closing or the Back-up Closing Date, which shall take place within thirty calendar days following the Auction, or such later date as may be agreed to in writing by the Plan Administrator, or as established pursuant to the Auction Sale Procedures or order of the Bankruptcy Court, with TIME BEING OF THE ESSENCE AS TO THE OBLIGATION TO CLOSE ON SUCH DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.

1.27    "Conditions Precedent to the Effective Date" means all of the conditions set forth in Article XIII of the Plan which must be satisfied or waive, if subject to waiver, prior to the Effective Date.

1.28    "Confirmation Date" means the date upon which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to the Chapter 11 Case.

1.29    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.30    "Confirmation Hearing" means the date of the hearing to be conducted by the Bankruptcy Court to consider confirmation of the Plan (as such date may be adjourned from time to time).

1.31    "Consummation" means the accomplishment or waiver, if subject to waiver, of the conditions precedent to consummation identified at Article XIII of the Plan.

1.32    "Credit Bid" means the $4,023,816 opening credit bid by Myrtle Funding to acquire all of the Debtor's right, title and interest to the Property at the Auction for no cash, by crediting the amount of such bid against the amount of the Allowed Myrtle Funding Secured Claim attributable to Myrtle Funding's Lien against the Property, provided however, that if any portion of Myrtle Funding's Claim is not allowed, Myrtle Funding will make up the difference, i.e., the disallowed portion of its Credit Bid, with a cash bid or Myrtle Funding may reduce its Credit Bid to the Allowed amount of its Claim.

1.33    "Creditor" means any Entity that is the Holder of a Claim arising on or before the Filing Date or under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.34    "Creditor Fund" shall mean the amount of (a) $25,000 to be funded by Myrtle Funding if Myrtle Funding is the Successful Bidder or (b) $5,000 to be funded by Myrtle Funding if the Successful Bidder is a Cash bidder *and* there are insufficient Sales Proceeds to pay (i) all unclassified Claims in full, (ii) the Allowed Myrtle Funding Secured Claim, including Allowed Myrtle Funding 503(b) Claim, (iii) all Priority Allowed Claims in full, and (iv) have at least $5,000 remaining from the Sales Proceeds for General Unsecured Creditors, including any Allowed unsecured portions of any secured claims.

1.35    "Debtor" means Armstead Risk Management, Inc., the debtor and debtor-in-possession in this Chapter 11 Case.

1.36    "Debtor's Counsel" means Courtney Davy, Esq., 305 Broadway, Suite 1400, New York, NY 10007, who as of August 9, 2019, has been retained by Order of the Bankruptcy Court to serve as counsel to the Debtor in this Chapter 11 Case [Docket No. 40].

1.37    "Disclosure Statement" means the document filed with the Bankruptcy Court by Myrtle Funding in connection with the Plan and the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code and approved by order of the Bankruptcy Court as containing "adequate information" as that term is defined at section 1125(a)(1) of the Bankruptcy Code, and any

exhibits annexed thereto and any documents delivered or filed in connection therewith, as the same may be amended or modified from time to time by any duly authorized or allowed amendment or modification.

1.38    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated on the Schedules and/or any Claim against which an objection to the allowance thereof has been interposed, which objection has not been determined by order of the Bankruptcy Court or such other court having jurisdiction over the matter.

1.39    "Disputed Claims Reserve" means the reserve to be established for Disputed Claims in accordance with the terms hereof, which reserve shall be established by the Plan Administrator as soon as practicable after of the Effective Date.

1.40    "Distribution" means a distribution of Cash pursuant to the Plan.

1.41    "Distribution Date" shall mean the ten (10) Business Days following the Closing Date, if applicable, and such other dates occurring as soon thereafter as reasonably practicable after the Closing when Distributions under the Plan shall commence, without further Bankruptcy Court Order, and thereafter shall mean such other dates on which Distributions are made to Holders of Allowed Claims and Interests in accordance with the terms hereof.

1.42    "Effective Date" means the date that the Confirmation Order becomes a Final Order and all Conditions Precedent to the Effective Date have been satisfied or waived.

1.43    "Entity" is defined as set forth in Section 101(15) of the Bankruptcy Code.

1.44    "Estate" means the collective estate created in Debtor's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.45    "Filing Date" means March 14, 2019, the date on which the Chapter 11 Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.46    "Final Decree" means the order to be entered by the Bankruptcy Court closing the Chapter 11 Case in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.47    "Final Order" means an order or judgment as to which order or judgment (or any revision, modification or amendment thereof) (a) the time to appeal has expired and as to which no appeal has been filed, or (b) an order or judgment which has been appealed, has been affirmed on appeal and as to which appeal the time for further appeal has expired.

1.48    "General Unsecured Claim" means any Claim which does not qualify as an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Allowed Myrtle Funding Secured Claim, Allowed Myrtle Funding 503(b) Claim, or Allowed Secured Claim held by any other claimholder, and which is not an Interest.

1.49    "Holder" means any Entity that holds a Claim or Interest.

1.50    "Impaired", when used with respect to any Claim, Interest or Class, has the same meaning as that contained in section 1124 of the Bankruptcy Code.

1.51    "Insider" shall have the meaning given to such term in section 101(31) of the Bankruptcy Code.

1.52    "Interest" means any equity interest in the Debtor as defined in Section 101(16) of the Bankruptcy Code.

1.53    "Lien" means with respect to an asset or interest of the Debtor, including with respect to the Property and Cash Collateral, any mortgage, lien, pledge, charge, encumbrance or other security interest of any kind affecting such asset.

1.54    "Myrtle Funding Cash Collateral" means all Cash Collateral generated from and after the Filing Date in connection the Property.

1.55    "Opening Credit Bid" means the initial opening Credit Bid by Myrtle Funding with respect to the Property in the amount of $4,023,816, which bid is subject to the terms of section 1.30 above with respect to any disallowed portion of Myrtle Funding's Claim.

1.56    "Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.57    "Plan Administrator" means Myrtle Funding in its capacity as administrator of the Plan (as amended).

1.58    "Post-Confirmation Estate" shall mean the post Confirmation Date estate of the Debtor comprised of (a) the Post-Confirmation Estate Assets including but not limited to the Property including the real property, bank accounts, and rents and proceeds from the Property (b) such additional or different corpus, assets or investments, if any, as the Debtor or the Post-Confirmation Debtor may from time to time acquire and/or hold and administer under the provisions of the Plan and (c) without limitation, any and all dividends, rents, royalties, income, proceeds, and other receipts of, from or attributable to the foregoing all of which vests in the Plan Administrator as of entry of the Confirmation Order.

1.59    "Post-Confirmation Debtor" means the Debtor from and after the Confirmation Date.

1.60    "Priority Claim" means any Claim, other than a claim by the Office of the United States Trustee, a Priority Tax Claim or an Administrative Expense Claim, which is entitled to priority treatment under section 507(a) of the Bankruptcy Code.

1.61    "Priority Tax Claim" means any Claim which is entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

1.62    "Professional Fees" means any claim for compensation and/or reimbursement of expenses under sections 330, 331 of the Bankruptcy Code by any Professionals which must be

applied for in accordance with the Bankruptcy Code and the Plan and must be allowed by the Bankruptcy Court before payment thereof may be made.

1.63    "Professionals" shall have the meaning ascribed in Section 327(a) of the Bankruptcy Code in this Chapter 11 Case.

1.64    "Property" means the Debtor's two adjoining multifamily, mixed use real properties located at 459-461 Myrtle Avenue, Brooklyn, NY 11205 [Block 1889, Lots 89 and 90] including all other assets of any kind assets including but not limited to valid leases to which the Debtor or its designee or agent was party as of the Filing Date or became party subsequent to the Filing Date, and further including without limitation, any and all of the rents, accounts receivable, deposits, furniture, fixtures, goods, equipment, inventory, royalties, issues, profits, revenue, income, general intangibles, leases, licenses, tenancies, Cash, Causes of Action, products, books and records and all other personal property of any kind or description owned by the Debtor or attributable to such Property, except however, Property does not include Avoidance Actions.

1.65    "Pro Rata" means proportionally, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the Allowed Amount of the Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the aggregate amount of the Allowed Claims of the Class.

1.66    "Rejection Damage Claim" means any Claim arising from the rejection of any executory contract or unexpired lease in accordance with Article VIII of the Plan.

1.67    "Rejection Damages Bar Date" means the date that is the later of (a) the first Business Day that is at least thirty (30) calendar days after entry of the order authorizing the rejection of the respective executory contract or unexpired lease; or (b) such date as the Court may fix in the Confirmation Order or in such applicable order authorizing such rejection.

1.68    "Related Documents" means the Plan and any documents necessary to consummate the transactions contemplated by the Plan.

1.69    "Sale Procedures" means those bidding procedures annexed hereto as Exhibit "A", which are incorporated herein by reference and approved as part of the Plan which shall govern the conduct of the Auction, the qualification of bidders to bid at the Auction and other matters related thereto.

1.70    "Sales Proceeds" means the cash proceeds of a sale of the Property.

1.71    "Schedules" means the schedules of assets and liabilities in accordance with Bankruptcy Rule 1007(b), filed by the Debtor with the Bankruptcy Court (as same may have been or may be amended from time to time in accordance with Bankruptcy Rule 1009).

1.72    "Secured Claim" means a claim that is either secured by a Lien on any property in which a Debtor has an interest pursuant to sections 506 or 1111(b) of the Bankruptcy Code or subject to setoff under section 553 of the Bankruptcy Code.

### C.  Rules of Interpretation

For purposes of the Plan (1) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (2) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented, (3) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (4) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (5) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (6) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### D.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.  Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of, the State of New York, without giving effect to its conflicts of law provisions or choice of law rules.

### ARTICLE II
### Treatment of United States Trustee Claims

United States Trustee Claims:  All outstanding quarterly fees owed to the Office of the United States Trustee shall be paid in full on the Distribution Date from the Sales Proceeds, plus available Cash, plus recoveries from Causes of Action or, if Myrtle Funding is the Successful Bidder, from Myrtle Funding, from available Cash and from recoveries from Causes of Action. The United States Trustee Claims are expected to be approximately $45,000 - $50,000 as of the Closing.

### ARTICLE III
### Treatment of Unclassified Administrative and Priority Tax Claims

Administrative Expense Claims.  Administrative Expense Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.  On the Distribution Date, each Allowed Administrative Expense Claim shall be paid in full in Cash from the Sales Proceeds of the sale of the Property or, if Myrtle Funding is the Successful Bidder, from Myrtle Funding, from available Cash and from recoveries from Causes of Action.  The Administrative Expense Claims include all claims against the Debtor for any costs or expenses of the Chapter 11

Case allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of the Debtor's estate, operation of the Debtor and the Debtor's allowed attorney's fees. Based on a review of the Official Bankruptcy Form B2030 filed by the Debtor's attorney, such attorney has received half of a $5,000 retainer for this representation leaving $2,500 of the retainer still due and owing and he asserts a rate of $300 per hour. Based upon an examination of the Court's Docket, the Debtor's counsel's retention application was filed and was approved by the Court. The Debtor has made minimal other filings and has not filed a sale motion, plan of reorganization or liquation, disclosure statement, motion to use cash collateral, motion to retain an accountant, a motion to retain a broker, or a motion to obtain postpetition financing. Accordingly, fees for Debtor's attorney should not be more than $10,000.00. Once retained by a Final Order, Debtor's attorney shall file a fee application for fees and costs subject to-approval of the Bankruptcy Court. The Plan Proponent reserves the right to object to the Debtor's Attorney's fees if they exceed $10,000.00. Myrtle Funding intends to assert its Myrtle Funding Allowed 503(b) Claim in the estimated amount of approximately $25,000. To the extent Allowed, such claim would be an unclassified Allowed Administrative Expense Claim. The Allowed Claim for the Debtor's attorney's fees and all other Allowed Administrative Expense Claims shall be paid from the Sales Proceeds, from available Cash, or from recoveries from Causes of Action or, if Myrtle Funding is the Successful Bidder, from Myrtle Funding, from available Cash and from recoveries from Causes of Action.

Each holder of an Administrative Expense Claim who seeks allowance of an Administrative Expense Claim (a) that is not incurred in the ordinary course of the Debtor's business, which Claim should be paid in the ordinary course, (b) that is not allowed by a Final Order, and that fails to timely and duly file a proof of its Administrative Expense Claim, or (c) for Professional Fees that fails to timely and duly institute a request for a hearing thereon within the time frame established by the Court at the Confirmation Hearing, as provided for in the Plan, shall NOT be treated as a creditor with respect to such claim for the purposes of receiving any distribution in connection with such Administrative Expense Claim. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date.

<u>Priority Tax Claims</u>. Priority Tax Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code. Each Holder of any Priority Tax Claim that is an Allowed Claim, shall be paid in full in Cash on the Distribution Date from the Sales Proceeds, from available Cash and from recoveries from Causes of Action or, if Myrtle Funding is the Successful Bidder, from Myrtle Funding, from available Cash and from recoveries from Causes of Action. Based on a review of the public records and the Claims Register in this case, there appear to be approximately $30,000 in priority tax claims including Claims by the Internal Revenue Service, NYC real estate taxes, water and sewer charges, and NYC Oath charges.

**ARTICLE IV**
**Classification of Claims and Interests**

4.1 <u>Designation of Classes Pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code</u>. Set forth at Section 4.3 below is the designation of Classes of Claims and Interests. U.S. Trustee Claims, Administrative Expense Claims, and Priority Tax Claims of the

kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code (set forth in Articles II and III above) have not been classified and are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code.

4.2    <u>Allowed Amount in a Particular Class.</u>  An Allowed Claim is part of a particular Class only to the extent of the amount that the Allowed Claim qualifies for treatment within that Class and is in a different Class to the extent that the remaining amount of the Allowed Claim qualifies for treatment within that different Class.

4.3    <u>Classes.</u>  All Allowed Claims shall be divided into the following Classes, which Classes shall be mutually exclusive:

(a)    <u>Class 1</u>.    Class 1 consists of all other Priority Claims.

(b)    <u>Class 2</u>.    Class 2 consists of the Myrtle Funding Secured Claim.

(c)    <u>Class 3</u>.    Class 3 consists of the Receiver Secured Claim.

(d)    <u>Class 3(b).</u> Class 3(b) consists of the CC 86th Street LLC Secured Claim.

(e)    <u>Class 4</u>.    Class 4 consists of all General Unsecured Claims.

(f)    <u>Class 5</u>.    Class 5 consists of all Interests.

## ARTICLE V
## Treatment of Claims and Interests

**5.1    Class 1:  Allowed Priority Claims**

<u>Treatment</u> - Class 1 consists of the Allowed Priority Claims.  As of the date hereof, there were no non-tax Priority Claims scheduled by the Debtor and no such claims have been filed as of the Bar Date.  To the extent such Claims exist and become Allowed Claims, they shall be paid Pro Rata up to in full from the Sales Proceeds, from available Cash and from recoveries from Causes of Action held on the Distribution Date, if any, or, if Myrtle Funding is the Successful Bidder, from Myrtle Funding up to the amount of the Creditor Fund, from available Cash and from recoveries from Causes of Action held on the Distribution Date, if any. If there is insufficient Cash from Sales Proceeds to make a distribution to Class 1 Claims, to the extent they exist, and Myrtle Funding is the Successful Bidder, then Myrtle Funding shall fund the Creditor Fund with $5,000 for Pro Rata Distributions to Class 1 and then to Classes 3 and 4 Pro Rata.  The Plan Proponent does not believe there are or will be any Class 1 Priority Claims. The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 3(b), 4, and 5.  The holder of any Priority Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata distribution from any Causes of Action up to payment in full.

11

Full Settlement - The treatment and consideration to be received by Allowed Priority Claims shall be, subject to the terms hereof, in full settlement and final satisfaction of such Claims against the Debtor.

Class 1 is Impaired under the Plan and is entitled to vote.

### 5.2    Class 2:    Allowed Myrtle Funding Secured Claim

Treatment - Class 2 consists of the Allowed Myrtle Funding Secured Claim against the Debtor in the amount of $3,795,916.27 as of the Filing Date, plus postpetition interest in the amount of approximately $220,000.00 as of October 31, 2019, plus postpetition legal fees in the amount of approximately $7,500 pursuant to section 506(b) of the Bankruptcy Code for a total estimated secured Claim of approximately $4,023,816 and, subject to the limitations set forth in section 506(a)(l) of the Bankruptcy Code, secured by, among other things, a duly recorded first priority Lien on the Property.  Myrtle Funding shall file its motion to allow its Myrtle Funding 503(b) Claim with the Court for the relevant postpetition legal fees and costs within three (3) Business Days of the Effective Date.

Myrtle Funding shall act as the stalking horse bidder with no right to a break-up fee and such stalking horse bid shall be in the amount of the Opening Credit Bid.  If Myrtle Funding is the Successful Bidder at an Auction and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, Myrtle Funding shall take title to the Property subject to any valid leases therein in full satisfaction of its pre- and postpetition claims against the Debtor and the Debtor's estate.  In that case, Myrtle Funding shall pay in full, in Cash, on the Distribution Date, the Allowed Claims in Articles II and III herein and such amount shall be paid directly from Cash held on the Distribution Date, if any, or if none from Myrtle Funding and from recoveries from Causes of Action.  Further, if Myrtle Funding is the Successful Bidder and there is insufficient Cash or recoveries from Causes of Action to pay the Allowed Claims in Classes 1, 3 and 4 in full, Myrtle Funding shall fund in Cash no later than the Distribution Date the $25,000 Creditor Fund, plus available Cash and recoveries from Causes of Action, which Fund shall be held by the Plan Administrator in a segregated bank account for funding Claims in Classes 1 and 3, 3(b) and 4.  In the event the Successful Bidder is a Cash bidder or the Property is otherwise sold for Cash at the Auction, Myrtle Funding shall be paid as set forth immediately below.

Any objection to the Myrtle Funding Secured Claim, including any Myrtle Funding 503(b) Claim filed by Myrtle Funding, shall be filed with the Court no later than 5:00 PM, three (3) business days prior to Closing, which Closing shall take place on no less than ten (10) calendar days written notice, or by such other objection deadline that may be established on notice to affected parties.  In the event that there is no timely objection to Myrtle Funding's Claims, and if the Myrtle Funding is not the Successful Bidder, then Myrtle Funding shall be paid at the Closing the prepetition amount of $3,795,916.27, plus the amounts due on account of post-petition interest and legal fees due to Myrtle Funding pursuant to section 506(b) of the Bankruptcy Code, plus the Allowed Myrtle Funding 503(b) Claim, in the total estimated amount as of October 31, 2019 of $4,048,816.27 if there are no objections thereto.  In the event there is a timely filed objection to the Myrtle Funding Secured Claim or to the Myrtle Funding 503(b) Claim, then funds in an amount equal to the Disputed Amount shall be placed in the Disputed Claim Reserve to be held by Plan Administrator's attorney, Ravert PLLC, in its attorney escrow account and shall only be distributed in accordance with Article X of the Plan.

Full Settlement - The treatment and consideration to be received by Myrtle Funding shall be, subject to the terms hereof, in full settlement and final satisfaction of all of its Claims against the Debtor.

Class 2 is Impaired under the Plan and is entitled to vote.

**5.3     Class 3:  Allowed Receiver Secured Claim.**

<u>Treatment</u> - Class 3 consists of the Allowed Claim of Gregory LaSpina, Esq., in his capacity as state court receiver (the "<u>Receiver</u>"), which is in the amount of $47,000, which is filed as a secured claim against the Property and proceeds thereof.

In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid only, then there will be no cash Sales Proceeds above the Allowed Myrtle Funding Secured Claim thereby rendering the Receiver Claim unsecured to the extent that there is no available Cash on hand.  In that event, if there is insufficient Cash, plus recoveries from Causes of Action, Myrtle Funding will fund the Creditor Fund in the amount of $25,000, and the Fund, plus available Cash and recoveries from Causes of Action will be the source of payment of the Receiver claim Pro Rata up to in full from available Cash and then from the Creditor Fund and recoveries of Causes of Action Pro Rata with Classes 3(b) and 4 after payment of Class 1 Claims, if any.  To the extent any portion of the Allowed Claim of the Receiver remains unpaid after payment from the Cash, Creditor Fund, and Causes of Action proceeds, the Receiver shall be paid in full by Myrtle Funding consistent with the Receiver's state law rights.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, available Cash and from recoveries from Causes of Action held on the Distribution Date, if any, after payment in full of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim and the Allowed Myrtle Funding 503(b) Claim, then to the extent the Receiver Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and from available Cash first, and then Pro Rata with Classes 3(b) and 4 from recoveries from Causes of Action after payment of Allowed Class 1 Claims in full to the extent held on the Distribution Date.  If there are insufficient cash Sales Proceeds to pay the Receiver Allowed Secured Claim in full from the Sales Proceeds, from available Cash and from recoveries from Causes of Action, then Myrtle Funding shall fund the Creditor Fund with $5,000, plus available Cash and recoveries from Causes of Action for Class 1 Claims and then Pro Rata to unsecured creditors.  If there is insufficient Cash to pay all of the Allowed Receiver Secured Claim from the $5,000 Creditor Fund and the Causes of Action, then Myrtle Funding shall pay any unpaid portion of the Receiver Claim in full consistent with the Receiver's state law rights in connection with the receivership.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 3(b), 4, and 5.  The holder of the Receiver Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata distribution from any Causes of Action up to payment in full.

<u>Full Settlement</u> - The treatment and consideration to be received by the Receiver shall be, subject to the terms hereof, in full settlement and final satisfaction of all of its Claims against the Debtor.

Class 3 is Impaired under the Plan and is entitled to vote.

### 5.4    Class 3(b): Allowed CC 86th Street LLC Secured Claim

<u>Treatment</u> – Class 3(b) consists Class 3 consists of the Allowed Secured Claim of CC 86th Street LLC ("<u>CC 86</u>"), which is in the amount of $140,000, which is a judgment recorded against the Debtor and therefore a lien against the Debtor's real property.

In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid only, then there will be no cash Sales Proceeds above the Allowed Myrtle Funding Secured Claim thereby rendering the CC 86 Claim unsecured.  In that event, if there is insufficient Cash, plus recoveries from Causes of Action to pay all unsecured claims in full, Myrtle Funding will fund the Creditor Fund in the amount of $25,000, and that Fund, plus available Cash and recoveries from Causes of Action will be the source of payment of the CC 86 claim Pro Rata up to in full from available Cash and then from the Creditor Fund and recoveries of Causes of Action Pro Rata with Class 4 after payment of Class 1 Claims, if any.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, available Cash and from recoveries from Causes of Action held on the Distribution Date, if any, after payment in full of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim and the Allowed Myrtle Funding 503(b) Claim, then to the extent the CC 86 Claim is an Allowed Secured Claim, CC 86 shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and from available Cash first, and then Pro Rata with Class 4 from recoveries from Causes of Action after payment of Allowed Class 1 Claims in full to the extent held on the Distribution Date.  If there are insufficient cash Sales Proceeds to pay the CC 86th Street LLC Allowed Secured Claim in full from the Sales Proceeds, from available Cash and from recoveries from Causes of Action, then Myrtle Funding shall fund the Creditor Fund with $5,000, plus available Cash and recoveries from Causes of Action for Class 1 Claims and then Pro Rata to unsecured creditors.  The Plan Proponent is not aware of any Causes of Action.  To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 3(b), 4, and 5.  The holder of the CC 86th Street Secured Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata distribution from any Causes of Action up to payment in full.

<u>Full Settlement</u> - The treatment and consideration to be received by CC 86th Street LLC shall be, subject to the terms hereof, in full settlement and final satisfaction of all of its Claims against the Debtor.

Class 3(b) is Impaired under the Plan and is entitled to vote.

### 5.5    Class 4:  General Unsecured Claims

<u>Treatment</u> - Class 4 consists of all Allowed General Unsecured Claims.  The Debtor scheduled no General Unsecured Claim and only one creditor filed a general unsecured claim, Con Edison which filed an unsecured claim in the amount of $828.05.

In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, then Myrtle Funding shall fund the Creditor Fund in the amount of $25,000, plus available Cash, and any recoveries from Causes of Action held on the Distribution Date (if any) for payment of Allowed Class 1 Claims, up to in full, and then Pro Rata to unsecured Claims Classes 3 and 4 up to payment in full of all Allowed Claims in such Classes.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, from available Cash and from recoveries from Causes of Action, after payment in full on the Distribution Date of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim and the Allowed Myrtle Funding 503(b) Claim, then to the extent the Receivership Claim is an Allowed Secured Claim, the Receiver shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and available Cash and then Pro Rata with Class 4, after payment in full of Class 1 Claims, from recoveries from Causes of Action. Allowed General Unsecured Claims shall then be paid up to in full on a Pro Rata basis from the cash Sales Proceeds, available Cash and recoveries from Causes of Action and Cash after payment in full of Classes 1 in full, and Classes 2 and 3 from Sales Proceeds and available Cash. If there are insufficient cash Sales Proceeds and Cash to pay Class 3, the Receivership Allowed Secured Claim in full, then, Myrtle Funding shall fund the Creditor Fund in in the amount of $5,000, plus available Cash and from recoveries from Causes of Action for payment of Allowed Class 1 Claims, up to in full, and then Pro Rata to the unsecured Allowed Claims in Classes 3 and 4. The Plan Proponent is not aware of any Causes of Action. To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 3(b), 4, and 5. The holder of the Class 4 Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata distribution from any Causes of Action up to payment in full.

Full Settlement - The treatment and consideration to be received by the Class 4 General Unsecured Creditors shall be, subject to the terms hereof, in full settlement and final satisfaction of all of their Claims against the Debtor.

Class 4 is Impaired under the Plan and entitled to vote.

**5.6    Class 5:  Interests**

Treatment - Class 5 consists of Allowed Interests in the Debtor. In the event Myrtle Funding is the Successful Bidder and the Property is transferred to Myrtle Funding pursuant only to its Credit Bid, then Myrtle Funding shall fund the Creditor Fund in the amount of $25,000, plus available Cash and recoveries from Causes of Action for payment of all Allowed Class 1 Claims, up to in full and the Pro Rata payment of Classes 3, 3(b) and 4 up to payment in full of all Allowed Claims in such Classes. Class 5 Interests shall only receive a distribution if Classes 1 – 4 are paid in full, subject to the terms hereof. Class 5 Interests shall receive excess Sales Proceeds, available Cash and from recoveries from Causes of Action after payment in full of all unclassified Claims set forth in Article II and III, and Classes 1, 2, 3, 3(b) and 4 Claims are paid in full with interest at the Federal Judgment Rate or in the case of Class 2 at the default rate set forth in the underlying note and in the proof of claim.

In the event that the Successful Bidder is a Cash bidder, then from the cash Sales Proceeds, from available Cash and from recoveries from Causes of Action, after payment in full on the Distribution Date of the unclassified Claims in Articles II and III above, and payment of the Allowed Myrtle Funding Secured Claim and the Allowed Myrtle Funding 503(b) Claim, then to the extent the Receiver Claim is an Allowed Secured Claim, the Receiver and CC 86th Street LLC shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds and from available Cash and, then Pro Rata with Class 4, after payment in full of Class 1 Claims from recoveries from Causes of Action. If there are insufficient Sales Proceeds to pay the Receiver and CC 86th Street LLC Allowed Secured Claims in full, then, Myrtle Funding shall fund the Creditor Fund in in the amount of $5,000, plus available Cash and recoveries from

Causes of Action for payment of Allowed Class 1 Claims up to in full, and then Pro Rata to the unsecured Allowed Claims of in Classes 3, 3(b) and 4. The Plan Proponent is not aware of any Causes of Action. To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 3(b), 4 and 5. The holder of any Claims in Classes 1, 3, 3(b) and 4, the extent they are Allowed Claims, shall be entitled to a Pro Rata distribution from any Avoidance Action up to payment in full, and Class 5 shall not be entitled to any Distribution unless and until Classes 1, 3, 3(b) and 4 and paid in full with interest at the Federal Judgment Rate.

Full Settlement – The treatment and consideration to be received by Holders of Allowed Interests in Class 5 shall be, subject to the terms hereof, in full settlement and final satisfaction of their respective Interests to the extent of the distributions provided for herein on account of such Interests.

Class 5 is an Impaired Class under the Plan and entitled to vote.

## ARTICLE VI
## Identification of Classes of Claims and
## Interests Impaired and Unimpaired Under the Plan

6.1     Classes of Claims Impaired by the Plan and Entitled to Vote. Holders of Class 1, 2, 3, 3(b), 4, and 5 are Impaired and the Holders of Allowed Claims and Interests in such Classes are entitled to vote to accept or reject the Plan.

6.2     Acceptance by an Impaired Class of Claims. Consistent with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

6.3     Class of Claims Unimpaired by this Plan is Conclusively Presumed to Accept this Plan. Under section 1126(f) of the Bankruptcy Code, the Holders of Class 1 Claims and Class 3 Claims are conclusively presumed to accept this Plan, and the acceptances of Holders of such Allowed Claims will not be solicited. There are no unimpaired Classes.

6.4     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ("Cram Down"). With respect to any Impaired Class that does not accept the Plan or is deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code, Myrtle Funding intends to request that the Bankruptcy Court "cram down" any such Class(es) and confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
## Controversy with Respect to Impairment

In the event of a controversy as to whether a Class of Claims or Interests is Impaired, the Court shall, after notice and a hearing, determine such controversy.

## ARTICLE VIII
## Unexpired Leases and Executory Contracts

8.1     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  The Property is occupied and subject to several leases including any antenna lease with T-Mobile, Omnipoint or any other antenna lease.  As of the Effective Date, any valid leases of any tenant with respect to the Property *shall be deemed assumed and assigned* as part of the sale of the Property and *the sale shall be subject to such leases to the extent they exist* (defined above as the Assumed Tenant Leases).  The Property is being sold as-is, where is with all faults including any leases to the extent they exist.  Any other leases rejected by order of the Bankruptcy Court shall be deemed to have been rejected as of Confirmation.  All Assumed Tenant Leases will be deemed to be assumed and assigned to the Successful Bidder or Back-up Bidder, as the case may be, as of the date of the Closing.  The Confirmation Order will include provisions for the assumption and assignment of the Assumed Tenant Leases.

8.2     <u>Bar Date for Rejection Damage Claims</u>.  Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, the Confirmation Order shall provide that any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Debtor must be filed with the Bankruptcy Court on or before the Rejection Damages Bar Date, with a copy thereof to (a) the Plan Proponent's counsel, Ravert PLLC; (b) counsel for the Debtor, Courtney Davy, Esq.; and (c) the United States Trustee for the Eastern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014.  Any Entity that fails to file and serve its Rejection Damage Claim within the time period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, Plan Administrator, the Post-Confirmation Estate or any Property or interests in Property of the Debtor or the Post-Confirmation Estate.  All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 4) under the Plan.

## ARTICLE IX
## Means for Effectuating the Plan
## Implementation of The Plan

9.1     <u>General</u>. This Plan is a liquidating plan that contemplates the orderly liquidation of all property of the Debtor's estate and as such, the Plan does not entitle the Debtor to a discharge.  All Claims against the Debtor are addressed herein and are paid in whole or in part pursuant hereto.  As of the date the Confirmation Order becomes a Final Order, the Plan Administrator shall control for all purposes all of the Debtor's property including the Property, any and all bank accounts of the Debtor and any other assets, and the Property shall be operated and managed by the Plan Administrator (or such property manager he may retain) and such Property and funds shall be property of the Post-Confirmation Estate.  Myrtle Funding is deemed to consent to the use of any funds in the Debtor's bank accounts to the extent such funds are Myrtle Funding's Cash Collateral.  The Plan Administrator or any such property manager that may be employed shall be authorized to continue the usual and ordinary operations of the Property pending the Auction Sale and Closing for the Property in accordance with the terms hereof, and to spend funds of the Post-Confirmation Estate as may be necessary to carry out the terms of this Plan.  The Plan Administrator shall cause the Property to be sold at a public Auction in accordance with the terms hereof, including the Auction Sale Procedures.

9.2     Sale of the Property in Accordance With the Auction Sale Procedures.

(a)     The Property shall be sold in accordance with the Auction Sale Procedures (which are annexed hereto at Exhibit "A") and the terms hereof, which shall govern all aspects of the sale.

(b)     Myrtle Funding is deemed a Qualified Bidder with an initial bid in the amount of the $4,023,816 which shall constitute the opening Credit Bid and such bid shall constitute the opening bid at the Auction.  As such amount is a credit bid, Myrtle Funding shall not be entitled to a break-up fee unless it is a Cash bidder.  Break-up fees not exceeding 3% of actual proven expenses shall be permitted in the sole discretion of the Plan Administrator upon consultation with the Broker but such break-up fees shall only be permitted where a bidder is a Cash bidder.  To the extent any portion of the Myrtle Funding Secured Claim is disallowed, Myrtle Funding shall make up the disallowed portion in cash as part of its Opening Credit Bid or may reduce its Credit Bid to the Allowed amount of its Claim.

(c)     The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, authorizing and directing the Debtor and Post-Confirmation Debtor to the extent necessary and requested by the Plan Administrator to execute or deliver or to join in the execution or delivery of any and all instruments required to effect a transfer of the Property, including any assumed leases, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan and, pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.  The Plan Administrator shall be authorized and directed to carry out the Debtor's obligations in the event the Debtor or Post-Confirmation Debtor fails or refuses to do so.

(d)     Pending the Closing of the sale of the Property, from and after the Effective Date, the Plan Administrator shall be authorized (i) to maintain and preserve the Property, including but not limited to collecting rents and enforcing leases subject to the Property continuing to be operated and managed by the Plan Administrator or a designated property manager appointed by the Plan Administrator in accordance with the terms hereof; and (ii) to take all necessary steps, and perform all necessary acts to consummate the terms and conditions of the Plan.

(e)     Notwithstanding anything contained herein or in the Auction Sale Procedures to the contrary, any person or entity acquiring the Property at the Auction, shall assume and be fully responsible and liable for evicting or otherwise removing any tenants, subtenants or other persons renting, using or occupying any units therein to the extent such tenants, subtenant, or other persons do not hold valid leases that have been assumed hereby, including any of their personalty, from and after the date of the Closing.

(f)     The Plan Administrator's Authority. In accordance with the terms hereof, the Plan Administrator is authorized to, among other things, execute and/or deliver and/or to join in the execution and/or delivery of any and all instruments required to effect a transfer of the

Property through an Auction, without limitation, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. The Plan Administrator may, in its sole discretion after consultation with the Broker, and without further order of the Bankruptcy Court, enter into a contract of sale with a stalking horse bidder if the Plan Administrator and Broker reasonably believe that such stalking horse bid is beneficial to the Auction process and the Plan Administrator may offer bid protections of up to 3% of the purchase price in provable expenses in the event the stalking horse bidder is out bid.

9.3    <u>Transfer Taxes</u>. The consummation of the Closing for the Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such sale, transfer and delivery of any and all instruments of transfer, without limitation, in connection therewith shall not be taxed under any Transfer Taxes, stamp tax, real estate transfer tax, mortgage recording tax or similar tax and to the extent permitted by §1146(a) of the Bankruptcy Code shall not be subject to any state, local, or federal law imposing sales tax. Such exemption shall include any transfer of the Property and the Myrtle Funding Cash Collateral to Myrtle Funding or its designee or to the Successful Bidder or purchaser if it is not Myrtle Funding.

9.4    <u>Transfer of Assets</u>. At the Closing for the Property, the Plan Administrator shall consummate the Closing and sale of the Property and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Bankruptcy Code. The purchaser, whether it Myrtle Funding, the Successful Bidder or, if applicable the Back-Up Bidder, shall receive (a) title to the Property by a bargain and sale deed without covenants against grantor's acts executed by the Post-Confirmation Debtor (and if the Post-Confirmation Debtor refuses, executed by the Plan Administrator on the Post-Confirmation Debtor's behalf) for and on behalf of the Post-Confirmation Debtor and its Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (b) together with any and all New York State and other governmental transfer tax returns; and (c) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the transfer and recording of the deed to the Property subject to the Bankruptcy Code section 1146(a) exemption, and to effectuate the transfer of the Property. The Post-Confirmation Debtor, the Plan Administrator, Myrtle Funding, and the Broker, do not make any representations or warranties whatsoever. The Property is being sold pursuant to the Plan "AS IS", "WHERE IS" in its condition on the Closing Date without any representations, covenants, guarantees or warranties by the Plan Administrator, the Post-Confirmation Estate, Plan Proponent or the Broker of any kind or nature whatsoever, and free and clear of any Liens, claims or encumbrances of whatever kind or nature accrued through the date of the Auction, except the Sale is subject to any and all valid leases, and any such Liens, claims, or encumbrances, if any, shall attach to the Sales Proceeds, and remain subject to any Liens, claims or encumbrances of whatever kind or nature thereafter accrued as of the date of the Auction. Any such Liens, claims or encumbrances of whatever kind or nature accruing from and after the Closing Date shall be the responsibility of the person or entity acquiring the Property at the Closing, whether it be Myrtle Funding through a Credit Bid, or any other entity or person in accordance with the terms of the Plan and Auction Sale Procedures.

9.5    <u>Cooperation of the Debtor's Principals</u>. The Post-Confirmation Debtor and its authorized signatories shall, at all times, reasonably cooperate with the Plan Administrator and the purchaser, Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns. The Debtor's principal(s) shall, at all times, reasonably cooperate with

the Plan Administrator and the purchaser, Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns in connection with the Auction, any Closing for the sale of any Property, and the administration of the Post-Confirmation Estate. The Plan Administrator shall be authorized to execute or otherwise take any lawful acts, without limitation, to carry out the terms of this Plan and the Confirmation Order to the extent the Debtor, the Debtor's principal or principals on the Debtor's behalf, or Post-Confirmation Debtor refuses to do so itself.

9.6    Funding and Causes of Action. The funds needed to pay all unclassified Claims including U.S. Trustee Fees, Allowed Administrative Expense Claims and including any claims of the Plan Administrator for services rendered and expenses incurred, Allowed Priority Tax Claims, and Allowed Priority Claims will be paid, as set forth herein by Myrtle Funding, from the Sales Proceeds, available Cash, post-Effective Date Cash from rents and proceeds from the Property, the Creditor Fund to the extent applicable, and/or recoveries from Causes of Action and Causes of Action as set forth herein. The Plan Proponent is not aware of any Causes of Action. To the extent Causes of Action exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 3(b), 4, and 5. The holder of any Claims in Classes 1, 3, 3(b) and 4, to the extent they are Allowed Claims shall be entitled to a Pro Rata distribution from any Causes of Action up to payment in full, provided that Class 5 shall not be entitled to any Distribution unless and until Classes 1, 3, 3(b) and 4 and paid in full with interest at the prevailing Federal Judgment Rate and Class 2 at its default rate.

9.7    Management of the Debtor. On and after the Effective Date, the Post-Confirmation Estate will be managed and administered for all purposes by the Plan Administrator or through his designee or property manager, if any, retained by the Plan Administrator and the operations of the Debtor shall cease. The Plan Administrator and its professionals shall be compensated from the Post-Confirmation Estate at a rate of no more than $300 per hour. The Plan Administrator has agreed to retain Ravert PLLC as its bankruptcy counsel at a rate of $300 per hour, and may retain special litigation counsel at their customary rates if the need arises. Professionals retained by the Plan Administrator shall not be required to file a fee application. The payment of the fees and expenses of the Plan Administrator and the Plan Administrator's retained professionals shall be made from the Post-Confirmation Estate including but not limited to the Sales Proceeds, available Cash, and proceeds of Causes of Action. No payments may be made to the Plan Administrator or its professionals from the Post-Confirmation Estate unless a statement of such fees and expenses has been sent to the Office of the United States Trustee and at least ten (10) Business Days have past without objection. Any objections that are not resolved shall be resolved by the Bankruptcy Court. Post-Effective Date, the Plan Administrator shall maintain the books and records for the Post-Confirmation Estate including revenue and expenditures of the Post-Confirmation Estate but shall not be required to file tax returns for the Debtor. The Debtor's principal shall bear the sole responsibility for the filing of the Debtor's tax returns for as long as applicable law requires such returns to be filed. The Plan Administrator's duties shall terminate upon the closing of this Bankruptcy Case.

9.8    Execution of Documents. The Plan Administrator, or its designee, is hereby authorized to and shall execute, release and deliver, for and on behalf of the Post-Confirmation Debtor and its Estate, all documents reasonably necessary to consummate the sale of the Property contemplated by the terms and conditions of the Plan, including without limitation, any

documents required in connection with the Closing and the sale of the Property in accordance with the Plan.

9.9     Filing of Documents.  Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record the Confirmation Order and any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

9.10     Transactions on Business Days.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

9.11     Implementation.   Pursuant to the Confirmation Order and upon confirmation of the Plan, the Plan Administrator shall be authorized to take all necessary steps, and perform all necessary acts, to conduct the auction and consummate the terms and provisions of the Plan. Post-Confirmation, but on or before the Distribution Date, the Plan Administrator may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.  The Plan Administrator is hereby authorized, and shall, execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan, without the need for any additional approvals, authorizations, consents or orders of the Bankruptcy Court, including but not limited to prosecuting any and all Causes of Action. Upon the completion of all acts required to be performed by the Plan Administrator and the Post-Confirmation Debtor under the Plan, the Plan Administrator shall file a certification of same with the Bankruptcy Court (which may be included in the application for entry of the final decree). The Plan Administrator shall then be relieved of its duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Administrator and/or the Post-Confirmation Debtor, the Post-Confirmation Estate, or payments to be made in connection therewith.  From and after the final Distribution Date, except as provided herein, the Post-Confirmation Estate and the Plan Administrator shall not be required to file any document, or take any action to withdraw the Post-Confirmation Debtor's business operation from any States where the Debtor previously conducted business operations.

9.12     Post-Confirmation Estate

(a)     Creation of Post-Confirmation Estate.  On the Effective Date a Post-confirmation Estate will be created and vest in the Plan Administrator consisting of the Property including the real property located 459-461 Myrtle Avenue, Brooklyn, NY 11205 [Block 1889, Lots 89 and 90], any bank accounts and Cash and deposits therein, and any other property of the Debtor including but not limited to interest in leaseholds, from which payment in connection with all remaining Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Priority Claims, Allowed General Unsecured Claims, and any other Allowed Claims, together with the Operating Expenses shall be paid as set forth in the Plan.

(b)    Vesting of Estate Assets.  On the Effective Date, and in accordance with the Confirmation Order, all of the Post-Confirmation Estate Assets without limitation shall remain with and vest in the Plan Administrator on behalf of the Post-Confirmation Estate under the control of the Plan Administrator, to be administered in accordance with the terms of the Plan.

9.13    Preservation and Vesting of Claims, Rights, Demands and Causes of Action. Pursuant to section 1123 of the Bankruptcy Code, the Plan Administrator, on behalf of and for the benefit of the Post-Confirmation Estate, shall be vested with, shall retain, and/or shall have the authority to prosecute and enforce any and all claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands, Avoidance Actions, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor, its Estate, the Plan Administrator, the Post-Confirmation Debtor and/or the Post-Confirmation Estate, including, without limitation, all Avoidance Actions and Causes of Action. The Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate, will also be authorized to challenge, object to and/or settle disputed Claims, without first having to seek approval from the Bankruptcy Court, in accordance with the terms and provisions hereof.  The Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate will be authorized and empowered to bind the Post-Confirmation Estate thereto.  Any settlement by the Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate, pursuant to and in accordance with the terms hereof shall be conclusively deemed to be in the best interests of the Post-Confirmation Estate.

9.14    Recoveries.  All Cash, proceeds and/or recoveries from the Avoidance Actions and Causes of Action and all other proceeds derived from the Plan Administrator's liquidation of Post-Confirmation Estate Assets will be included in the Post-Confirmation Estate and administered and disbursed in accordance with the provisions of the Plan.

9.15    Reporting Requirements.  The Plan Administrator, with the assistance of a property manager (if the Plan Administrator so chooses to retain one), if any, shall prepare and maintain distribution schedules with respect to all Classes of Claims and shall prepare and file all Post-Confirmation reports required by the Court and the Office of the United States Trustee. When all objections to all Claims have been resolved by a Final Order or otherwise in accordance with the terms hereof, and all Post-Confirmation Estate Assets have been converted to Cash or abandoned, the Plan Administrator shall compute the final Pro Rata share of all Claimants and distribute the Cash on the Distribution Date.  No greater than ninety (90) days following the date of the Effective Date, the Plan Administrator shall file with the Bankruptcy Court and serve on the U.S. Trustee and those parties who have requested special notice Post-Confirmation, a status report and a summary financial update explaining what progress has been made toward entry of the Final Decree, including a statement of all disbursements made pursuant to the Plan along with an estimated date when an application for a Final Decree will be filed with the Court.  Until entry of the Final Decree, further status reports including a statement of all disbursements made pursuant to the Plan shall be filed periodically approximately every ninety (90) days and served on the same entities to the extent any assets remain for liquidation and distribution.  Each status report shall generally include a description of Post-Confirmation Estate Assets sold or otherwise realized upon during the relevant period, gross and net proceeds received, distributions and payments made, expenses incurred and paid, and cash on hand.  A

22

standard Post-Confirmation Operating Report as required by the U.S. Trustee shall meet the requirements of this status report.

9.16    Post-Confirmation Debtor. Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor.  However, all property of the Debtor, including the Property, real property, bank accounts, Avoidance Actions and Causes of Action, however, shall vest in the Plan Administrator on the Effective Date and the Debtor and the Debtor's principal(s) shall have no further authority over such estate assets and claims of any type.  The Debtor may dissolve after, and only after, the entry of a Final Decree if it so desires. The Debtor's principals shall be responsible for preparing or causing to be prepared all local, state, or federal tax returns, filings, and/or reports that are necessary or appropriate.  Although as of the Effective Date the Debtor's operations shall cease, to the extent that the Debtor has independent reporting requirements Post-Confirmation such reporting requirements shall be unaffected by this Plan.  To the extent that Post-Confirmation reports are due based on the operations of the Post-Confirmation Estate, the Plan Administrator shall be solely responsible for the filing of such reports.

9.17    Prosecution of Objections to Claims; Amendment of Schedules.  Except as set forth herein, the Plan Administrator reserves the right and shall have the sole authority, subsequent to the Confirmation Date but prior to the Chapter 11 case being closed, to object to any Claim or request for allowance of an Administrative Expense Claim, whether included on the Debtor's Schedules or reflected in a proof of claim filed with the Bankruptcy Court, and to initiate contested matters and to initiate such proceedings as may be necessary and appropriate in the Bankruptcy Court for a determination of the Allowed Amount of any and all Claims or requests for allowance of Administrative Expense Claims in accordance with the terms hereof. The Debtor shall retain the right to object to any claim of Myrtle Funding provided however that such objection shall be filed with the Court no later than 5:00 PM, three business days prior to Closing.  The rights of the Debtor and the Office of the United States Trustee to object to (i) any Administrative Expense Claim or (ii) any claim asserted by Myrtle Funding, whether in its own capacity or its capacity as Plan Administrator, shall be preserved provided however that any such objections must be asserted no later than three (3) business days prior to a Closing on the Sale of the Property.

## ARTICLE X
## Distributions; Disputed Claims Reserve

10.1    Timing of Distributions Due Under Plan.  (a) All Distributions and payments required under the Plan to Holders of Allowed Claims will be paid from the Post-Confirmation Estate on the dates and in the manner indicated in the Plan.  Except as otherwise provided in the Plan, without in any way limiting Sections 11.5 and 11.6 below, and subject to the terms of the Plan, Distributions in respect of (i) the Allowed Claims in Class 1 of the Plan shall be made as set forth in Section 5.1; (ii) the Allowed Claims in Class 2 of the Plan shall be made as set forth in Section 5.2; (iii) Allowed Claims in Class 3 of the Plan shall be made as set forth in Section 5.3; (iv) Allowed Claims in Class 4 of the Plan shall be made as set forth in Section 5.4; and (v) Allowed Interests in Class 5 of the Plan shall be made as set forth in Section 5.5, in each case as required by the Plan from the Post-Confirmation Estate Assets on, or as soon as practicable following, the dates provided for such Allowed Claims under the Plan.

10.2    <u>Manner of Distributions</u>.  At the option of the Plan Administrator, Distributions from the Post-Confirmation Estate may be made by wire transfer, check, or such other method as the Plan Administrator deems appropriate under the circumstances and in the Plan Administrator's sole discretion.  No Distributions shall be required to be made to any Holder of an Allowed Claim in an amount less than five ($5.00) dollars, unless request is made, in writing, to the Debtor.

10.3    <u>Cash Payments.</u>  Cash payments made pursuant to the Plan will be in U.S. dollars. Cash payments made pursuant to the Plan in the form of checks issued by the Plan Administrator shall be void if not cashed within one hundred twenty (120) days of the date of the issuance. Requests for reissuance of any check shall be made directly to Plan Administrator as set forth in Section 10.8 below.

10.4    <u>Disputed Claims Reserve.</u>

(a)    Contemporaneously with the Closing on the Property, or as soon thereafter as the Plan Administrator shall determine, the Plan Administrator shall establish the Disputed Claims Reserve except that the Disputed Claim Reserve for any portion of Myrtle Funding's Claim shall be held in the attorney escrow account of Ravert PLLC.  For purposes of establishing the Disputed Claims Reserve, the Plan Administrator shall reserve the maximum allowable amount for each Disputed Claim.  On the date of any Distribution, the Plan Administrator shall deposit into the Disputed Claims Reserve Cash equal to the maximum amount that would be distributable to all Holders of Disputed Claims in respect of all Distributions made on that date, if such Disputed Claims were Allowed.  Except for any Reserve for a Myrtle Funding Disputed Claim, the Plan Administrator shall maintain the Disputed Claims Reserve in a segregated, interest bearing account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim.  The Plan Administrator shall pay any taxes due and owing with respect to the Disputed Claims Reserve, and reserve all Distributions on account of the Disputed Claims, net of such taxes.

(b)    In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim, the Plan Administrator shall distribute to the Holder of such Allowed Claim from the Disputed Claims Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Effective Date.

(c)    From time to time as Disputed Claims are disallowed or become Allowed Claims in amounts less than what was reserved, the Cash deposited in the Disputed Claims Reserve that otherwise would have been distributed to the holders of such Disputed Claims shall be released from and no longer held in the Disputed Claims Reserve and, subject to the provisions hereof, shall be distributed in accordance with this Section 10.1.

10.5    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 as determined by the Bankruptcy Court as of the Confirmation Date, to the extent not previously paid by the Debtor, shall be paid by the Plan Administrator from the operating income of the Plan Administrator, if any, pending the Closing on the Sale of the Property and, upon the Closing, from the Sales Proceeds, from available Cash and from recoveries from Causes of Action.  If Myrtle Funding is the successful bidder based on a credit bid, and there are no other funds

available to pay the statutory fees pursuant to 28 U.S.C. §1930, together with any interest thereon pursuant to 31 U.S.C. §3717, then such fees shall be paid in full by Myrtle Funding.

10.6    <u>Interest on Claims</u>.  Except with respect to Holders of Claims entitled to interest under applicable non-bankruptcy law or as otherwise expressly provided herein, no Holder of an Allowed Claim, including, without limitation, Holders of Allowed General Unsecured Claims under Class 4 of the Plan shall receive interest on any Distribution to which such Holder is entitled hereunder, regardless of whether such Distribution is made on the Effective Date or thereafter, unless and until all holders of Claims in Classes 1, 2, 3, and 4 have been paid in full without interest and there are sufficient funds for a distribution to Class 5.  In such case, the applicable interest rate on such Claims in Classes 1, 3, and 4 will be the Federal Judgment Rate and the Class 2 interest rate shall be the default rate.

10.7    <u>Withholding of Taxes.</u>

(a)    The Plan Administrator may withhold from any Property to be distributed under the Plan any Property which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law.  As a condition to making any Distribution under the Plan, the Plan Administrator may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification or documentation as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b)    Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations

10.8    <u>Undeliverable or Unclaimed Distributions</u>.

(a)    All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Debtor's Schedules or in the Claims Register in this case unless a Claim Holder notifies the Plan Administrator in writing after the Effective Date of a change of address. Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Plan Administrator for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Plan Administrator to reissue such check, and (ii) provides the Plan Administrator with such documentation as the Plan Administrator requests to verify in her/his sole discretion that such Entity is entitled to such check.  If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution or Post-Confirmation Estate provided for in such check.  Any such forfeited Distributions shall revert to the Post-Confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(b)      In the event that any Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distributions will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address.  All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Post-Confirmation Estate and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary.  Upon such forfeiture of Cash or other Post-Confirmation Estate property, such Cash or Post-Confirmation Estate Assets shall be the property of the Post-Confirmation Estate.

10.9    Post-Effective Date Operating Expenses.    The reasonable fees and expenses of the Plan Administrator and his/her Professionals incurred after the Confirmation Date shall constitute Operating Expenses of the Post-Confirmation Estate and shall be payable from available Cash including Cash from rents or any other proceeds of the Property or Causes of Action, or income from the Post-Confirmation Estate upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Plan Administrator, with a copy to the Office of the United States Trustee.  The Plan Administrator and U.S. Trustee shall have ten (10) Business Days from the receipt of any such fee and expense statements to dispute all or part of such statement.  Upon the expiration of said ten (10) Business Days, provided there are sufficient funds available in the Post-Confirmation Estate, the Plan Administrator or Estate or its manager shall pay the Professionals the undisputed portion of such fees and expenses.  Any disputes shall be submitted to the Bankruptcy Court for determination.

**ARTICLE XI**
**Procedures for Resolving Disputed Claims**

11.1    Objections to Claims.  From and after the Effective Date except as otherwise provided in the Plan, (a) only the Plan Administrator and the Office of the United States Trustee, and the Debtor solely with respect to any Claim of Myrtle Funding, shall have the authority to file or litigate to judgment objections to any Claims, and (b) only the Plan Administrator shall have the right to settle, compromise, and withdraw objections to unclassified or Priority Claims

11.2    Procedure.  Unless otherwise ordered by the Bankruptcy Court or until an objection to a Claim by the Plan Administrator is withdrawn, except as set forth above, only the Plan Administrator may litigate the merits of each Disputed Claim until a Final Order is entered with respect to such Claim.

11.3    Payments and Distributions With Respect to Disputed Claims.  No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim.

11.4    Estimation of Claims Reserve.  For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to Holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Distribution Date, or such later date as may be established by the Bankruptcy Court and/or the Plan Administrator, pursuant to section 502 of

the Bankruptcy Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which event the amount so fixed will be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent or unliquidated amount for such Claim, which amount will be the maximum amount in which such Claim ultimately may be Allowed under the Plan, if such Claim is ultimately Allowed in whole or in part.  The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims from the Post-Confirmation Estate, regardless of the amount finally Allowed on account of such Disputed Claims, and no Holder shall have recourse against the Post-Confirmation Estate, the Debtor, the Plan Administrator, or the Plan Proponent or any of their respective Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their respective property, as such Holder's sole recovery shall be from the Distributions to be made to Holders of Allowed Claims (subject to any claims that any Holder may have against any guarantors).

11.5     Distributions After Allowance of Disputed Claims.  Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan.

11.6     Distributions After Disallowance of Disputed Claims.   Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such Holder's Claim, may receive subsequent Distributions if and to the extent that other Claims are disallowed or expunged and additional funds for distribution become available in each case pursuant to and in accordance with Article V of the Plan.

11.7     Setoffs and Recoupments.  Except with respect to Avoidance Actions or Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Plan Administrator or its designee as instructed by the Plan Administrator, or Post-Confirmation Estate as instructed by the Plan Administrator, as the case may be, may pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off or recoup against any Allowed Claim, the Distributions to be made pursuant to the Plan on account of such Claim, any Causes of Action of any nature that the Debtor, the Post-Confirmation Estate, or that the Debtor's successors may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor, the Post-Confirmation Debtor, the Plan Administrator or the Post-Confirmation Estate, or their successors, of any Avoidance Actions or Causes of Action that the Plan Administrator, the Debtor, the Post-Confirmation Debtor, the Post-Confirmation Estate, or their successors may possess against such Holder.

## ARTICLE XII
## Injunction, Release and Exculpation

12.1     Injunction.

On and after the Effective Date, each Holder of a Claim or Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Plan Administrator, the Post-Confirmation Estate, and/or the Successful

Bidder from implementing the Plan or the Confirmation Order or exercising control over the Property, including the real property of the Debtor.

12.2    <u>Exculpation</u>.  Neither the Plan Proponent nor any of their respective officers, directors, members, employees or other agents, financial advisors, attorneys, and accountants shall have any liability to any Holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct, gross negligence, fraud and/or criminal conduct as finally determined by a Final Order of the Bankruptcy Court.  Neither the Plan Proponent nor the Plan Proponent shall be liable for a debt of the Debtor, the Debtor's Estate or the Post-Confirmation Estate (as appropriate) solely as a result of its role as Plan Proponent or Plan Administrator.

## ARTICLE XIII
### Conditions Precedent to the Confirmation
### <u>Order, the Effective Date and Consummation of the Plan</u>

13.1    <u>Condition Precedent to Entry of the Confirmation Order</u>.  The following condition must be satisfied on or before the Confirmation Date:  The Confirmation Order must be in form and substance reasonably acceptable to the Plan Administrator and Plan Proponent.

13.2    <u>Conditions Precedent to the Effective Date.</u>  The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective: the Confirmation Order must be entered by the Bankruptcy Court and become a Final Order.

13.3    <u>Condition Precedent to Consummation</u>.  Upon the Auction having occurred and upon the completion of the Closing, the Plan shall be deemed substantially consummated.

If the Plan has not been consummated in accordance with the terms hereof within one hundred eighty (180) days of the Confirmation Date, or such longer period as may be agreed by the Plan Administrator, the Plan Administrator shall file with the Bankruptcy Court and serve a notice indicating an inability to consummate the Plan and the Bankruptcy Court shall thereafter schedule a hearing to consider the just disposition of the Chapter 11 case.

13.4    <u>Effect of Failure of Conditions.</u>  If all the Conditions Precedent to the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than one hundred eighty (180) days after the Confirmation Date, or by such later date as is proposed and approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by the Plan Proponent made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the order confirming the Plan shall not be vacated if all of the conditions to Consummation set forth in Section 13.3 are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.

If the Confirmation Order is vacated pursuant to this Section 13.4, the Plan shall be void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or (b) prejudice in any manner the rights of the Holder of any Claim or Interest in the Debtors.

## ARTICLE XIV
## Miscellaneous Provisions

14.1    <u>Bankruptcy Court to Retain Jurisdiction</u>.  Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

(a) To consider any modification of the Plan under Bankruptcy Code § 1127 and/or modification of the Plan before "substantial consummation" thereof as defined in Bankruptcy Code § 1101(2);

(b) To hear and determine all controversies, suits, and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

(c) To hear and determine all controversies, suits, and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor or the Plan Proponent or any other party or party in interest, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

(d) To hear and determine all rights or Avoidance Actions or Causes of Action which may exist on behalf of the estate;

(e) To hear and determine all applications for allowance of compensation and expense reimbursement of Professionals for periods prior to the Effective Date;

(f) To hear and determine any and all applications, motions, adversary proceedings, contested matters or litigated matters;

(g) To enter a final decree closing this Chapter 11 Case; and

(h) To hear and determine any disputes concerning tenancy, possessory rights, leases and/or any dispute concerning the Property that might otherwise be litigated in landlord tenant court outside of this Bankruptcy Case and this Court shall retain jurisdiction to enter an order of eviction and to authorize the U.S. Marshall to carry out orders of eviction or orders to vacate;

(i) To hear and determine any application (a) by the Plan Administrator to resign or, (b) by any other party to remove the Plan Administrator for cause; and

(j) To the extent not set forth above, to hear and determine any and all disputes, matters, proceedings, or controversies arising under or in connection with the Plan to aid in the administration or consummation of the Plan.


14.2    Binding Effect of the Plan.  Nothing contained in the Plan or the Disclosure Statement will limit the effect of confirmation as set forth in Bankruptcy Code §1141.  The provisions of the Plan shall be binding upon and inure to the benefit of the Plan Administrator, the Post- Confirmation Estate, any Holder of a Claim or Interest, or their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity affected by the Plan.

14.3    Fractional Cents.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

14.4    Successors and Assigns.   The rights and obligations of any person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person or Entity.

14.5    Blank Ballots.  Any Ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.  Any Ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

14.6    Authorization of Corporate Action.  Upon the entry of the Confirmation Order, all actions contemplated by the Plan will be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the transfer and/or contribution of the Post-Confirmation Estate Assets and no further Court orders will be needed to implement the Plan and transactions contemplated herein.  On the Confirmation Date, appropriate members or authorized signatories of the Debtor, the Post-Confirmation Debtor are directed to execute and to deliver, and if the Debtor or the Debtor's principals refuse, the Plan Administrator is hereby authorized and directed to execute and deliver on their behalf, any and all agreements, documents and instruments contemplated by the Plan, the Post-Confirmation Estate and/or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without the need for any additional authorizations, approvals or consents.

14.7    Withdrawal of the Plan.  The Plan Proponent reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan in its sole discretion.  If the Plan Proponent revokes or withdraws the Plan, or if the Confirmation Date does not occur, or if the Effective Date does not occur then (a) the Plan will be deemed null and void and (b) the Plan shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed and, in such event, the rights of any Holder of a Claim or Interest shall not be affected nor shall such Holder be bound by, for purposes of illustration only, and

without limitation, (i) the Plan, (ii) any statement, admission, commitment, valuation or representation contained in the Plan, the Disclosure Statement, or the Related Documents or (iii) the classification and proposed treatment (including any allowance) of any Claims in this Plan. The foregoing shall not impair Myrtle Funding to seek a substantial contribution claim pursuant to section 503 of the Bankruptcy Code

14.8    Captions.  Article and Section captions used in the Plan are for convenience only and will not affect the construction of the Plan.

14.9    Method of Notice.   Any notice or other communication hereunder shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended (or, in the case of notice by facsimile transmission or e-mail, when received and telephonically or electronically confirmed), addressed as follows:
    If to 461 Myrtle Avenue Funding LLC, Plan Proponent or Plan Administrator:

    Ravert PLLC
    116 West 23 Street, Suite 500
    New York, New York 10011
    Attn.: Gary O. Ravert, Esq.
    Email:  gravert@ravertpllc.com

    If to the Debtor,

    Courtney Davy, Esq.
    305 Broadway, Suite 1400
    New York, NY 10007
    Email: courtneydavy.esq@gmail.com

    Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court

14.10    Amendments and Modifications to Plan.  The Plan may be altered, amended or modified by the Plan Proponent, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code.  The Plan Proponent may also seek to modify the Plan at any time after confirmation so long as (a) the Plan has not been substantially consummated, and (b) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

14.11    Section 1125(e) of the Bankruptcy Code.  Confirmation of the Plan will constitute a finding that Myrtle Funding has proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

14.12    Entire Agreement.  The Plan, as described herein, and the Disclosure Statement and exhibits thereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations

with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed to by the parties in writing.

14.13   <u>Post-Confirmation Obligations</u>.  Under current applicable law, the Plan Administrator for and on behalf of the Post-Confirmation Estate, is required to pay fees assessed against Debtor's Estate under 28 U.S.C. § 1930(a)(6) until entry of an order closing the Chapter 11 Case.  Subject to a change in applicable law, the Plan Administrator shall pay all fees assessed against the Estate under 28 U.S.C. §1930(a)(6) from the Post-Confirmation Estate and shall file Post-Confirmation reports including a statement of all disbursements made pursuant to the Second Plan until entry of an order closing the Chapter 11Case of Debtor.  Although as of the Effective Date the Debtor's operations shall cease, to the extent that the Debtor has independent reporting requirements Post-Confirmation such reporting requirements shall be unaffected by this Plan.  To the extent that Post-Confirmation reports are due based on the operations of the Post-Confirmation Estate, the Plan Administrator shall be solely responsible for the filing of such reports.

Dated: December 30, 2019
      New York, New York

    461 Myrtle Avenue Funding LLC

    By:<u>/s/Mark Levin</u>
    Name: Mark Levin
    Title: Authorized Signatory

    <u>Prepared By:</u>

    RAVERT PLLC

Dated: December 30, 2019
      New York, New York

    By: <u>/s/ Gary O. Ravert</u>
      Gary O. Ravert
      116 West 23 Street, Suite 500
      New York, New York 10011
      Tel: (646) 961-4770
      Direct Fax: (917) 677-5419
      Email: gravert@ravertpllc.com

    *Attorneys for 461 Myrtle Avenue Funding LLC*